# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                )
**EMMANUEL N. LAZARIDIS**, *et al.*,            )
                                                )
        **Plaintiffs,**                )
                                                )
    **v.**                                      )   **Civil Action No. 09-1177 (RMC)**
                                                )
**UNITED STATES DEPARTMENT OF**                 )
**JUSTICE**, *et al.*,                          )
                                                )
        **Defendants.**               )
_____     )

## UNITED STATES DEPARTMENT OF JUSTICE'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT
## AS TO THE FEDERAL BUREAU OF INVESTIGATION

Defendant, the United States Department of Justice, through undersigned counsel,

respectfully moves the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for

partial summary judgment on the grounds that no genuine issue of material fact exists and that

Defendant is, therefore, entitled to partial judgment as a matter of law.   In support of its motion,

Defendant submits the attached Memorandum of Points and Authorities and the Declaration of

David M. Hardy.   A proposed order is attached.

    *Pro se* Plaintiff Emmanuel N. Lazaridis, will please take note that the assertions

contained in the accompanying  attachments in support of Defendant's motion will be accepted

by the Court as true unless Plaintiff submits his own affidavit or other documentary evidence

contradicting the assertions in Defendant's declarations and attachments.  *See Neal v. Kelly*, 963

F.2d 453, 456 (D.C. Cir. 1992), and Local Rule 7(h).  Furthermore, Rule 56(e) of the Federal

Rules of Civil Procedure provides that:

    A supporting or opposing affidavit must be made on personal knowledge, set out

facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.  If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.  The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).

Because this is a dispositive motion, Defendant has not sought Plaintiff Emmanuel N.

Lazaridis's consent before filing.  *See* LCvR 7(m).

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney
For the District of Columbia
D.C. Bar No. 447889

RUDOLPH CONTRERAS
Chief, Civil Division

By: _____/s/_____
JUDITH A. KIDWELL
Assistant United States Attorney
555 Fourth Street, N.W.-Civil Division
Room E4212
Washington, D.C.  20530
(202) 514-7250
Judith.A.Kidwell@usdoj.gov

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **EMMANUEL N. LAZARIDIS,** *et al.***,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 09-1177 (RMC)** |
| | ) | |
| **UNITED STATES DEPARTMENT OF JUSTICE,** *et al.***,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to LCvR 7(h), Defendant, United States Department of Justice ("DOJ"), hereby submits the following Statement of Material Facts As To Which There Is No Genuine Issue on behalf of the Federal Bureau of Investigation ("FBI"). This Statement is supported by the Declaration of David M. Hardy, the Section Chief of the Record/Information Dissemination Section ("RIS"), Records Management Division ("RMD"), formerly at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C., and currently located in Winchester, Virginia ("Hardy Decl.").

1.      Beginning in August 2005, Plaintiff Emmanuel N. Lazaridis ("Mr. Lazaridis"), sent Freedom of Information Act ("FOIA")/ Privacy Act ("PA"), requests to FBIHQ, the FBI's Baltimore Field Office ("BAFO"), and the FBI's Detroit Field Office ("DEFO"), seeking access to documents related to himself and his minor daughter, V.L.  Hardy Decl. ¶ 4.  Although the FBI's searches did not locate any responsive main files, on appeal the Office of Information

Policy, formerly known as the Office of Information and Privacy ("OIP"), determined that DOJ could not honor Mr. Lazaridis's requests and related appeals because he was a fugitive from justice, and his appeals were closed.  *Id.*

2.      After the Court's May 26, 2010 ruling, the FBI renewed its search efforts for records responsive to Mr. Lazaridis's requests.  Hardy Decl. ¶ 5.   The FBI located two responsive main files in the FBI's DEFO, 7B-DE-96883 and 7B-DE-95297, both of which list Mr. Lazaridis as a main subject and consists of a total of approximately 1243 pages of responsive material.  *Id.*

3.      On June 11, 2010, the FBI released 503 of the 1243 pages to Mr. Lazaridis.  *Id.* However, INTERPOL-U.S. National Central Bureau (referred to as "INTERPOL" in Mr. Hardy's declaration), referred 100 pages of records, three pages of which were duplicates, to the FBI for direct response.  *Id.*, Fn. 3.  On or about June 22, 2010, the FBI released an additional three pages to Mr. Lazaridis.  *Id.*   The Executive Office for United States Attorneys ("EOUSA"), also referred 13 pages to the FBI for direct response.  Hardy Decl. Fn. 6.  Out of the 13 pages, the FBI determined that one page was not responsive and that 11 pages were duplicates of pages that the FBI had processed in response to Mr. Lazaridis's request.  *Id.*  The FBI released one page in part and invoked FOIA exemptions 6, 7(C) and 7(D) to withhold the one page in part.  *Id.*

4.      The FBI processed a total of 1353 pages, released 274 pages in full, released 231 pages in part, and withheld 840 pages in full, 449 of which were duplicates of other released pages and 391 pages based on applicable exemptions.  Hardy Decl.  33.

5.      The FBI properly invoked FOIA Exemptions 2, 3, 6, 7(C) and 7(D) to withhold certain records from Mr. Lazaridis.  Hardy Decl. ¶ 6.  In addition, the FBI properly asserted

2

section (j)(2) of the Privacy Act to withhold certain records.  Hardy Decl. ¶¶ 34-35; *see also* 5

U.S.C. § 552a(j) and 28 C.F.R. § 16.96.

      6.     The FBI conducted reasonable and adequate searches for records responsive to his

FOIA/PA requests.  Hardy Decl. ¶¶ 26-32.

      7.     The FBI provided a detailed and coded *Vaughn* index [Hardy Decl. ¶¶ 36-38],

and released all reasonably segregable information.  Hardy Decl. ¶¶ 36-38, 69.

              Respectfully submitted,

              RONALD C. MACHEN JR.
              United States Attorney
              For the District of Columbia
              D.C. Bar No. 447889

              RUDOLPH CONTRERAS
              Chief, Civil Division

By:       _____/s/_____
              JUDITH A. KIDWELL
              Assistant United States Attorney
              555 Fourth Street, N.W.-Civil Division
              Room E4212
              Washington, D.C.  20530
              (202) 514-7250
              Judith.A.Kidwell@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————

EMMANUEL N. LAZARIDIS, *et al.*,        )
                                        )
            Plaintiffs,                 )
                                        )
    v.                                  )        Civil Action No. 09-1177 (RMC)
                                        )
UNITED STATES DEPARTMENT OF             )
JUSTICE, *et al.*,                      )
                                        )
            Defendants.                 )

—————————————————————

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT UNITED STATES DEPARTMENT OF JUSTICE'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO
THE FEDERAL BUREAU OF INVESTIGATION**

**Preliminary Statement**

The complaint in this case was filed by Plaintiff, Emmanuel N. Lazaridis ("Mr.

Lazaridis"), on behalf of himself and his minor child, V.L., naming as Defendants the U.S.

Department of Justice ("DOJ"), the National Center for Missing and Exploited Children, and the

International Centre for Missing and Exploited Children (hereafter "non-federal defendants").

Complaint ("Compl.") ¶¶ 4-6.  Mr. Lazaridis raised numerous claims and sought various relief,

including relief under the Freedom of Information Act ("FOIA").[1]

On May 26, 2010, the Court granted the non-federal defendants' motion to dismiss them

from this action.  *See* Docket No. 38, Memorandum Opinion.  Additionally, the Court ruled that

it lacked jurisdiction over certain claims.  *Id*.  Therefore, the claims still at issue are claims

pertaining to Mr. Lazaridis's requests for his own records to three DOJ components, the

---

[1] Mr. Lazaridis also sought to have the Court declare him the proper custodian of V.L.,
and to have the Court declare that he is not a fugitive.

Executive Office for the United States Attorneys ("EOUSA"), the United States National Central

Bureau of INTERPOL ("USNCB"), and the  Federal Bureau of Investigation ("FBI").  Compl.

¶¶ 9-14.   DOJ now moves for partial summary judgment as to the FBI's response to Mr.

Lazaridis's FOIA and Privacy Act ("PA"), requests on the grounds that the FBI has:  (1)

conducted reasonable searches for records responsive to Mr. Lazaridis's request; (2)  released

records to Mr. Lazaridis in response to his request; and (3) properly invoked the FOIA

exemptions discussed below to withhold responsive records.  Accordingly, Defendant DOJ

should be granted partial summary judgment with respect to the FBI's response to Plaintiff's

FOIA/PA request.

## STATEMENT OF FACTS

Defendant DOJ's Statement of Material Facts As To Which There Is No Genuine Issue

sets forth relevant facts and is incorporated herein.

## ARGUMENT

### I.  STANDARDS OF REVIEW

### A.    Motion for Summary Judgment Under Rule 56

Summary judgment is appropriate when "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A "genuine

issue" is one whose resolution could establish an element of a claim or defense and, therefore,

affect the outcome of the action.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   To

determine which facts are material, the Court must look to the substantive law on which each

claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether

there exists a genuine issue of material fact sufficient to preclude summary judgment, the Court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. *Id.*, at 255. A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of his position. *Id*. at 252.

### B.    Summary Judgment In FOIA Cases

Summary judgment is the routine method for resolving most FOIA actions when there are no material facts genuinely at issue. *See Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 313-14 (D.C. Cir. 1988); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to *de novo* review by the Courts. *See* 5 U.S.C. § 552(a)(4)(B); *King v. U.S. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987); *Hayden v. National Security Agency Cent. Sec. Serv.*, 608 F.2d 1381, 1384 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980).

In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and, if applicable, that each document that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Dept. of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). Summary judgment may be granted to an agency in a FOIA case solely on the basis of agency affidavits or declarations if the "affidavits [or declarations] are 'relatively detailed, non-conclusory, and not impugned by evidence . . . of bad faith on the part of the agency.'" *McGhee v. Central Intelligence Agency*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *see also Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *Hayden v. National Security Agency Cent. Sec. Serv.*, 608 F.2d at 1387.

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and a plaintiff with affidavits or declarations which show that the documents are exempt from disclosure. *Summers v. Dep't of Justice,* 140 F.3d 1077, 1080 (D.C. Cir. 1998); *Military Audit Project v. Casey*, 656 F.2d at 738; *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) (fashioning what is now commonly referred to as a "*Vaughn* index"). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Services v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal citation and quotation omitted). The Court may award summary judgment solely based on the information provided in affidavits or declarations when they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d at 738; *accord Campbell v. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998) (quoting *King v. Dep't of Justice*, 830 F.2d at 217); *Vaughn v. Rosen*, 484 F.2d at 826.

As discussed below and supported by the Declaration of David M. Hardy, the FBI properly invoked FOIA Exemptions 2, 3, 6, 7(C) and 7(D), and 5 U.S.C. § 552a(j)(2), to withhold information and records from Mr. Lazaridis and deny him access to records. Accordingly, DOJ is entitled to partial summary judgment as to the FBI.

## II.  THE FBI CONDUCTED REASONABLE SEARCHES
## FOR RESPONSIVE RECORDS

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records. *Oglesby v. U.S. Dept. of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Weisberg v. U.S. Dept. of Justice*, 705 F.2d 1344, 1352 (D.C. Cir. 1983).  This "reasonableness" standard focuses on the method of the search, not its results, so that a search is not unreasonable simply because it fails to produce relevant material.  *Id.* at 777 n.4.  An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located.  *Oglesby v. U.S. Army*, 920 F.2d at 68.  Simply stated, the adequacy of  the search is "dependent upon the circumstances of the case." *Truitt v. Dept. of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

The search standards under FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located.  *Nation Magazine v. U.S. Customs Serv.,* 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  It has been held that " 'the search need only be reasonable; it does not have to be exhaustive.' " *Miller v. Dept. of State*, 779 F.2d 1378, 1383 (8th Cir. 1985) (citing *National Cable Television Association v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973).  Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent. *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d at 892 n.7.  Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it.  *Maynard v. CIA*, 986 F.2d 546, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Army*, 920 F.2d at 68; *see SafeCard Servs. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith." *Miller v. Dept. of State,* 779 F.2d at 1383; *Goland v. CIA,* 607 F.2d 339 352 (D.C. Cir. 1978). Though the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" *Carney v. Dept. of Justice*, 19 F.3d 807, 812 (2d Cir. 1994), *cert. denied*, 513 U.S. 823 (1994) *(quoting SafeCard Servs. v. SEC*, 926 F.2d at 1200), the burden rests with the agency to demonstrate the adequacy of its search. Once the agency has met this burden through a showing of convincing evidence, the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. *Miller v. Dept. of State,* 779 F.2d at 1383. A requester may not rebut agency affidavits with purely speculative allegations. *See Carney v. Dept. of Justice*, 19 F.3d at 813; *SafeCard v. SEC,* 926 F.2d at 1200; *Maynard v. CIA*, 986 F.2d at 559-560. The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate." *Steinberg v. Dept. of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (*quoting Weisberg v. Dept. of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

## A. The FBI's Central Records System

The FBI's Central Records System ("CRS"), which is utilized to conduct searches in response to FOIA and PA requests, enables the FBI to maintain information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities. Hardy Decl. ¶ 26. The

6

records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other

files compiled for law enforcement purposes.  *Id*.  This system consists of a numerical sequence of

files which are broken down according to subject matter.  *Id*.  The subject matter of a file may

relate to an individual, organization, company, publication, activity, or foreign intelligence matter

(or program).  *Id*.  Certain records in the CRS are maintained at FBIHQ, whereas records that are

pertinent to specific field offices of the FBI are maintained in those field offices.  *Id*.  Although

the CRS is primarily designed to serve as an investigative tool, the FBI searches the CRS for

documents that are potentially responsive to FOIA/Privacy Act requests.  *Id*.

### B.  <u>The Automated Case Support System</u>

The mechanism that the FBI uses to search the CRS is the Automated Case Support

System ("ACS").  Hardy Decl. ¶ 26.  Because the CRS cannot electronically query the case files

for data, such as an individual's name or social security number, the required information is

duplicated and moved to the ACS so that it can be searched.   Hardy Decl. ¶ 29.  More than 105

million records from the CRS were converted from automated systems previously utilized by the

FBI.  *Id*.  Automation has facilitated more economic and expeditious access to records maintained

in the CRS. *Id*.

The retrieval of data from the CRS is made possible through the ACS using the

General Indices, which are arranged in alphabetical order.  Hardy Decl. ¶ 27.  Entries in the

General Indices fall into two categories:

> (1) A "main" entry — A "main" entry, or "main" file, carries the
> name corresponding with a subject of a file contained in the CRS.

> (2) A "reference" entry — "Reference" entries, sometimes called

> "cross-references" are generally only a mere mention or reference
> to an individual, organization, or other subject matter contained in
> a document located in another "main" file on a different subject
> matter.

*Id*. Searches made in the General Indices to locate records concerning a particular subject or

individual – such as Emmanuel N. Lazaridis – are made by searching the subject requested in the

index. Hardy Decl. ¶ 28. FBI field offices have automated indexing functions. *Id*.

The ACS consists of three integrated, yet separately functional, automated applications

that support case management functions for all FBI investigative and administrative cases:

(1) Investigative Case Management ("ICM") – which provides the ability to open,

assign, and close investigative and administrative cases as well as set, assign, and track leads.

The Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens a

case. The field offices that receive leads from the OO are referred to as Lead Offices ("LOs").

When a case is opened, it is assigned a Universal Case File Number ("UCFN"), which is used by

FBI headquarters, as well as all FBI field offices and Legats that are conducting or assisting in the

investigation. As an example, using the fictitious file number "111-HQ-12345," an explanation

of the UCFN is as follows: "111" indicates the classification for the specific type of investigation;

"HQ" is the abbreviated form used for the Office of Origin of the investigation, which in this case

is FBI Headquarters; and "12345" indicates the individual case file number for the particular

investigation;

(2) the Electronic Case File ("ECF") – which serves as the central electronic

repository for the FBI's official text-based documents. ECF supports the universal serial concept

in that only the creator of a document serializes it into a file. This provides a single-source entry

of serials into the computerized ECF system. All original serials are maintained in the OO case file; and

(3) the Universal Index ("UNI") – which continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index; however, the LOs may index additional information as needed. UNI, an index of approximately 108.5 million records, functions to index names to cases, and to search names and cases for use in FBI investigations. Names of individuals or organizations are recorded with identifying applicable information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event. Hardy Decl. ¶ 30.

The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the FBI Special Agent ("SA") - and on occasion, support employees - assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, and the SSA at FBI headquarters. Hardy Decl. ¶ 31. The FBI does not index every name in its files; rather, it indexes only that information considered to be pertinent, relevant, or essential for future retrieval. *Id*. Without a "key" (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved. *Id*. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal and national security statutes. *Id*. Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, *i.e.*, Emmanuel N. Lazaridis. *Id*.

### C.  <u>FBI's Searches For Mr. Lazaridis's Records</u>

The FBI's initial search for responsive records in 2005 did not locate any responsive main files at either FBIHQ or in BAFO.  Hardy Decl. ¶ 32.  It did not conduct a search of the DEFO in 2005.  *Id*.  After the Court's May 26, 2010 ruling, the FBI renewed its search efforts and conducted a specific search of the CRS utilizing a six-way phonetic breakdown of Mr. Lazaridis's name including any variations of the first or last name which sound like or are spelled differently than the name.  *Id*.  The FBI also used Mr. Lazaridis's date of birth, place of birth, social security number and prior addresses to facilitate the identification of responsive records.  *Id*.  As a result of this search, the FBI identified two responsive main files in the DEFO, both of which list Mr. Lazaridis as a main subject.  *Id*.  The FBI located a total of approximately 1243 pages of responsive material.  *Id*.

The FBI also received a referral of 100 pages from INTERPOL for direct response.  Hardy Decl. Fn. 3, ¶ 33.  However, three of the pages were identical to three other pages in the referral. *Id*.  The FBI also received a 13-page referral from EOUSA for direct response.  Hardy Decl. ¶ 33.  The FBI, therefore processed 1353 pages. *Id*.; Fn. 8.

### III.  **THE FBI PROPERLY INVOKED FOIA EXEMPTIONS 2,3,6, 7(C) AND 7(D)**<br>**TO WITHHOLD RECORDS**

The FBI released 274 pages in full and 239 pages in part.  Hardy Decl. ¶ 33.  It withheld 840 pages in full, 449 of which were duplicates of other released pages and 391 pages as a result of the invocation of applicable FOIA exemptions.  *Id*.  As discussed below, the FBI invoked FOIA Exemptions 2, 3, 6, 7(C) and 7(D), and Privacy Act Exemption (j)(2) to withhold these responsive records.

A.      **Exemption 2**

"Exemption 2,  5 U.S.C. § 552(b)(2), permits an agency to withhold information 'related

solely to the internal personnel rules and practices of an agency.'" *Stolt-Nielsen Transportation*

*Group LTD. v. United States*, 534 F.3d 728, 732 (D.C. Cir. 2008).   The agency must show that

the materials are "predominant[ly] internal []." *Sussman v. United States Marshals Service*, 494

F.3d 1106, 1112 (D.C. Cir. 2007) (quoting *Schwaner v. Dept. of the Air Force*, 898 F.2d 793, 795

(D.C. Cir. 1990); *see also Stolt-Nielsen Transportation Group LTD. v. United States*, 534 F.3d at

732.

Thus, Exemption 2 applies primarily to two categories of materials: (1) internal agency

matters so routine or trivial that they could not be "subject to ... a genuine and significant public

interest;" and (2) internal agency matters of some public interest "where disclosure may risk

circumvention" of statutes or agency regulations. *Dept. of the Air Force v. Rose*, 425 U.S. 352,

369-70 (1976); *National Treasury Employees Union v. U.S. Customs Service*, 802 F.2d 525, 528-

30 (D.C. Cir. 1986); *Crooker v. ATF*, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981) (*en banc*) (holding

that ATF manual describing law enforcement surveillance techniques qualified as predominantly

internal and exempt from disclosure).   The first category is known as the "low 2" exemption.

*Public Citizen, Inc. v. OMB*, 598 F.3d 865, 869 (D.C. Cir. 2010) (citing *Schiller v. NLRB*, 964

F.2d 1205, 1207 (D.C. Cir. 1992) (internal quotations marks omitted)).   The second category,

known as the "high (b)(2) exemption," *see Schiller v. NLRB*, 964 F.2d at 1207, applies to

predominantly internal materials if their disclosure "significantly risks circumvention of agency

regulations or statutes." *Public Citizen, Inc. v. OMB*, 598 F.3d 869 (citing *Stolt-Nielsen*

*Transportation Group LTD. v. United States*, 534 F.3d at 732) (internal quotation marks

11

omitted)).

The FBI invoked FOIA Exemption 2 (high) to withhold: (1) internal telephone and facsimile numbers of FBI personnel and (2) internal telephone and facsimile numbers of non-FBI federal government personnel.  Hardy Decl. ¶¶ 41, 42, Fns 9, 10.  The FBI invoked FOIA Exemption 2 (high) to protect internal telephone and facsimile numbers of FBI personnel, because disclosure of these numbers could impede the FBI's effectiveness and may risk circumvention of the law.  Hardy Decl. ¶ 41, Fn. 9.  Telephone and facsimile numbers are used by FBI personnel on a daily basis while working on significant national security and criminal investigations.  *Id.* Disclosure of these telephone and facsimile numbers could subject these personnel to harassing telephone calls or facsimiles which could disrupt official business, including impeding the ability of Special Agents to conduct and conclude functions related to law enforcement investigations in a timely manner.  *Id.*

The FBI also invoked FOIA Exemption 2 (high) to withhold internal telephone and facsimile numbers of non-FBI federal government personnel, because these individuals might also be subjected to harassing telephone calls or facsimiles which could disrupt official business and impede these individuals' ability to conduct official business in a timely manner.  Hardy Decl. ¶ 42, Fn. 10.

The FBI properly withheld the above-referenced information pursuant to FOIA Exemption 2 (high).  Alternatively, this information is properly withheld under Exemption 2 (low).  *See Ray v.* FBI, 441 F. Supp.2d 27, 33 (D.D.C. 2006) (concluding that the FBI properly withheld an internal telephone number under Exemption 2 (low) because the "telephone number is related solely to the [FBI's] internal practices and . . . . is of no interest to the general public."); *Truesdale*

12

*v. U.S. Dept. of Justice*, 2005 WL 3294004, at *5 (D.D.C. Dec. 5, 2005) (internal telephone

numbers and facsimile numbers); *Russell v. FBI*, 2004 WL 5574164, at *4 (D.D.C. Jan. 9, 2004)(a

source number, a source file number and internal telephone numbers)).

### B. Exemption 3

Exemption 3 of the FOIA allows an agency to withhold information prohibited from

disclosure by another statute if that statute:

> (A) requires that the matters be withheld from the public in such a manner as to
> leave no discretion on the issue, or (B) establishes particular criteria for
> withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3).  It is well-settled that Federal Rule of Criminal Procedure 6(e), which

provides for the secrecy of the grand jury, properly falls within the ambit of FOIA's Exemption 3.

*Lopez v. Dept. of Justice*, 393 F.3d 1345, 1349 (D.C. Cir. 2005); *Senate of the Commonwealth of*

*Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987); *Fund for Constitutional*

*Government v. Nat'l Archives and Records Service*, 656 F.2d 856, 867-68 (D.C. Cir. 1981).

Once an agency establishes that a statute falls within the ambit of Exemption 3, it must

also establish that the records in question fall within the withholding provision of the

nondisclosure statute.  *Fund for Constitutional Govt. v. National Archives & Records Serv.*, 656

F.2d at 866-69.  An agency must establish a nexus between the release of the information and the

divulgence of a protected aspect of the grand jury's investigation in order to invoke Exemption 3.

*Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d at 584.

Here, the FBI invoked FOIA Exemption 3, in conjunction with Rule 6(e) of the Federal

Rules of Criminal Procedure to withhold information which explicitly discloses matters occurring

before a Federal Grand Jury. Hardy Decl. ¶ 44.  Specifically, the FBI withheld Federal Grand Jury

13

subpoenas, including the names and identifying information of individuals subpoenaed by the

Federal Grand Jury, and information concerning Federal Grand Jury meetings.  Hardy Decl. ¶ 44,

Fn. 11.  The information withheld clearly relates to matters occurring before a grand jury.  *See*

Fed. R. Crim. P. 6(e); *see also Lopez v. Dept. of Justice*, 393 F.3d 1345 (D.C. Cir. 2005)

(approving the withholding of grand jury subpoenas); *Senate of the Commonwealth of Puerto*

*Rico v. U.S. Dep't of Justice*, 823 F.2d at 582 (holding that records that would reveal, *inter alia*,

"the identities of [grand jury] witnesses" and "the strategy or direction of the [grand jury's]

investigtion" are properly withheld under FOIA Exemption 3); *Kishore v. Dep't of Justice*, 575

F.Supp.2d 243, 255 (D.D.C. 2008) (approving the withholding of "Grand Jury subpoenas, the

names . . . of individuals subpoenaed to testify"); *Brunetti v. F.B.I.*, 357 F. Supp.2d 97, 105

(D.D.C. 2005) (same)).

**C.  Exemptions 6 and 7(C)**

**1.  Exemption 6**

Exemption 6 of the FOIA protects "personnel and medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5

U.S.C. § 552(b)(6).  "The Supreme Court has interpreted the phrase 'similar files' to include all

information that applies to a particular individual."  *Lepelletier v.  FDIC*, 164 F.3d 37, 46 (D.C.

Cir. 1999), *quoting Dept. of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982).  The Court

has also emphasized that "both the common law and the literal understanding of privacy

encompass the individual's control of information concerning his or her person."  *U.S. Dept. of*

*Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 763 (1989).

In order to determine whether there would be a "clearly unwarranted invasion of personal

14

privacy," the Court must balance the interests of protecting "an individual's private affairs from

unnecessary public scrutiny," and "the public's right to governmental information." *Lepelletier v.*

*FDIC*, 164 F.3d at 46 (interior quotation marks omitted), citing *United States Dept. of Defense v.*

*FLRA*, 964 F.2d 26, 29 (D.C. Cir. 1992), *quoting Dept. of Air Force v. Rose*, 425 U.S. 352, 372

(1976).  In determining how to balance the private and public interests involved, the Supreme

Court has sharply limited the notion of "public interest" under the FOIA:  "[T]he *only* relevant

public interest in the FOIA balancing analysis [is] the extent to which disclosure of the

information sought would 'she[d] light on an agency's performance of its statutory duties' or

otherwise let citizens know 'what their government is up to.'" *Lepelletier v. FDIC*, 164 F.3d at 46

(editing by the court, emphasis supplied, interior quotation marks omitted), quoting *United States*

*Dept. of Defense v. FLRA*, 510 U.S. 487, 497 (1994).  *See also Reporters Committee*, 489 U.S. at

773.  Information that does not directly reveal the operation or activities of the federal

government "falls outside the ambit of the public interest that the FOIA was enacted to serve." *Id.*

at 775.  Further, "something, even a modest privacy interest, outweighs nothing every time."

*National Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989); *but see*

*Lepelletier v. FDIC*, 164 F.3d at 48 (in extraordinary circumstance where the individuals whose

privacy the government seeks to protect have a "clear interest" in release of the requested

information, the balancing under Exemption 6 must include consideration of that interest).

## 2.  Exemption 7(C)

The Supreme Court affirmed the broad scope of Exemption 7(C) in *National Archives and*

*Records Admin. v. Favish*, 541 U.S. 157 (2004).  Exemption 7(C) authorizes the government to

withhold "records or information compiled for law enforcement purposes, but only to the extent

that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  In order to trigger the balancing of public interests against private interests, a FOIA requester must (1) "show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and (2) " show the information is likely to advance that interest." *Boyd v. Criminal Division of U.S. Dept. of Justice,* 475 F.3d 381, 366, (D.C. Cir. 2007) (citing *Nat'l Archives & Records Admin. v. Favish,* 541 U.S. at 172.  If the public interest is government wrongdoing, then the requester must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Nat'l Archives & Records Admin. v. Favish* 541 U.S. at 174.

Moreover, this Circuit has consistently held that this exemption protects the privacy interests of all persons mentioned in law enforcement records, including investigators, suspects, witnesses and informants. *See Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (citing cases).  When a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." *Keys v. U.S. Dept. of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987) (citing *Pratt v. Webster,* 673 F.2d 408, 418 (D.C. Cir. 1982).  A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'" *Keys v. U.S. Dept. of Justice*, 830 F.2d at 340 (quoting *Pratt*, 673 F.2d at 421).

Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could

reasonably be expected to constitute an unwarranted invasion of personal privacy."  This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files.  *See, e.g., U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 776-80 (1989).  Only where the requester can produce meaningful evidence  –  "more than a bare suspicion" – which would cause a reasonable person to believe that the government had engaged in impropriety should the Court even consider balancing the privacy interests against the public interest in disclosure.  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. at 174.

### 3. <u>Mr. Lazaridis's Records</u>

The records at issue were compiled for law enforcement purposes.  The two main DEFO files responsive to Mr. Lazaridis's request concern a law enforcement investigation based on authority provided by the International Parental Kidnapping Crime Act of 1993, 18 U.S.C. § 1204. Hardy Decl. ¶ 46.

As is its usual practice, the FBI invoked FOIA Exemption 6 in conjunction with FOIA Exemption 7(C) in balancing the privacy interests at issue to withheld information or records. Hardy Decl. Fn. 12.  However, this Court need not address the applicability of FOIA Exemption 6 if it finds that the FBI properly invoked FOIA Exemption 7(C).  *See Truesdale v. U.S. Dept. of Justice*, 2005 WL 3294004, at *7 n.3 (D.D.C. Dec. 5, 2005).

Specifically, the FBI withheld: (1) names and/or identifying information (such as telephone numbers) of FBI Special Agents and support personnel; (2) names and/or identifying information regarding third-party victims; (3) names and/or identifying information concerning third parties who provided information to the FBI; (4) names and/or identifying information of

17

local law enforcement employees; (5) names and/or identifying information concerning third parties merely mentioned; (6) names and/or identifying information of non-FBI federal employees; and (7) names and/or identifying information concerning employees of foreign government police agencies.  Hardy Decl. ¶¶ 49-60, Fns. 13-19.

- **Names and/or Identifying Information of FBI Special Agents and Support Personnel**

The FBI invoked FOIA exemptions 6 and 7(C) to protect the names and/or identifying information (such as telephone numbers) of FBI Special Agents who were responsible for conducting, supervising and maintaining the investigative activities reported in the documents and support personnel.  Hardy Decl. ¶ 49.  These responsibilities included conducting interviews and compiling the resulting information, and reporting on the status of investigations.  *Id*.

An assignment of a Special Agent to any particular investigation is not by choice.  *Id*. Publicity regarding any particular investigation to which an agent is assigned may seriously prejudice his or her effectiveness in conducting other investigations.  *Id.*  The privacy consideration is also to protect FBI special agents from unnecessary, unofficial questioning as to the conduct of this or other investigations.  *Id.*  Because FBI special agents conduct inquiries into various criminal and national security violations, and conduct searches and arrests, they come into contact with people who may carry a grudge for many years.  *Id.*  These individuals may seek revenge on the special agents, support personnel or other federal employees involved in a particular investigation.  *Id*.  Thus, the publicity associated with the release of an agent's identity in connection with a particular investigation could trigger hostility toward that agent.  *Id.* Disclosure of this information would constitute a clearly unwarranted invasion of personal privacy.  *Id*.  Moreover, because the disclosure of this information would not shed light on the

18

operations and activities of the FBI, there is no public interest in the disclosure of this information.  *Id.*

Additionally, support personnel are assigned to handle tasks related to the official investigation into Mr. Lazaridis's allegations as reflected in the documents responsive to his request.  Hardy Decl. ¶ 50.  They could become targets of harassing inquiries for unauthorized access to investigations if their identities were released, similar to the harms articulated above for special agents.  *Id.*  These support personnel maintain substantial privacy interests in not having their identities disclosed.  *Id.*  Moreover, in balancing the privacy interests of the FBI support personnel against the public interest in disclosure, the FBI determined that the release of this information would not shed light on the performance of the FBI's statutory duties.  Hardy Decl. ¶ 51.  Thus, the disclosure of this information would constitute a clearly unwarranted invasion of their privacy and could reasonably be expected to constitute an unwarranted invasion of personal privacy.  *Id.*

•      **Names and/or Identifying Information Regarding Third-party Victims**

The FBI invoked FOIA exemptions 6 and 7(C) to protect the name, professional title and locale information of a victim of crime.  Hardy Decl. ¶ 52.  Release of the victim's identity could cause harm to the victim, including, but not limited to, personal distress or embarrassment.  *Id.*  Thus, there is a strong privacy interest in the protection of such personal information.  *Id.*  Moreover, disclosure of such information would constitute a clearly unwarranted invasion of personal privacy and could reasonably be expected to constitute an unwarranted invasion of personal privacy.  *Id.*  More importantly, there is no public interest in the disclosure of this information and it would not shed light on the operations and activities of the FBI.  *Id.*

19

- **Names and/or Identifying Information Concerning Third Parties Who Provided Information To The FBI**

The FBI invoked FOIA Exemptions 6 and 7(C), at times in conjunction with Exemption 7(D),  to protect the names and identifying information of individuals who were interviewed by the FBI during the course of the criminal investigation described in the DEFO files.  Hardy Decl. ¶ 53.  Identifying information concerning these third parties withheld includes addresses, dates of birth and other personal information.  *Id*.  The FBI has learned that information provided by individuals during an interview is one of the most productive investigative tools used by law enforcement agencies.  Hardy Decl. ¶ 54.  The largest roadblock to obtaining the desired information through an interview is the fear by the interviewee that his or her identity will possibly be exposed, and as a consequence, he or she could be harassed, intimidated, or threatened with legal or economic reprisal, possible physical harm or even death.  *Id*.   In order to surmount these obstacles, persons interviewed by the FBI must be assured that their names and personally-identifying information will be held in the strictest confidence.  *Id*.  The continued access by the FBI to persons willing to honestly relate pertinent facts bearing upon a particular investigation far outweighs any public interest.  *Id*.  Moreover, these third party interviewees maintain a substantial privacy interest and the disclosure of their identities would not shed light on the operations and activities of the FBI.  Hardy Decl. ¶ 55.

- **Names and/or Identifying Information of Local Law Enforcement Employees**

The FBI invoked FOIA exemptions 6 and 7(C) to withhold the names and identifying information of state and local law enforcement employees.  Hardy Decl. ¶ 56.  These employees aided the FBI in its investigation of Mr. Lazaridis.  *Id*.  The rationale for protecting the identities

of FBI special agents discussed in ¶ 49 applies equally to the names of these local law
enforcement employees.  *Id*.  Disclosure of this information would constitute a clearly
unwarranted and an unwarranted invasion of personal privacy.  *Id.*

•      **Names and/or Identifying Information Concerning Third Parties Merely Mentioned**

The FBI invoked FOIA exemptions 6 and 7(C) to withhold the names and identifying
information of third parties merely mentioned in documents concerning the criminal
investigations in the processed documents.  Hardy Decl. ¶ 57.   Identifying information includes
addresses, aliases and other personal information.  *Id.*   These third parties maintain legitimate
privacy interests in not having this information disclosed because it wold reveal that they were
connected with the FBI's investigation in some way, which carries a negative connotation.  *Id.*
Disclosure of their identities could subject these individuals to harassment or criticism, and focus
derogatory inferences and suspicion on them.  *Id*.  These individuals were determined to have a
substantial privacy interest in not having information about them disclosed.  *Id*.  The FBI balanced
their right to privacy against the public interest in disclosure and determine that there was no
public interest.  *Id.*  Thus, disclosure of this information would constitute a clearly unwarranted
and an unwarranted invasion of personal privacy.  *Id*.

•      **Names and/or Identifying Information of Non-FBI Federal Employees**

The FBI invoked FOIA Exemptions 6 and 7(C) to protect the names and identifying
information of Assistant U.S. Attorneys, and employees of the U.S. House of Representatives and
Department of State.  Hardy Decl. ¶ 58.  The FBI determined that disclosure of their identifying
information could subject these employees to unauthorized inquires and harassment which could
constitute a clearly unwarranted invasion of their personal privacy.  *Id.*   The rationale for

21

protecting non-FBI federal employees is the same as that for FBI employees. *Id.* Moreover,

disclosure of this information would not shed light on the operations and activities of the federal

government. *Id.*

- **Names and/or Identifying Information Concerning Employees of Foreign Government Police Agencies**.

The FBI invoked FOIA Exemptions 6 and 7(C) to withhold the names and identifying

information of employees of foreign government police agencies. Hardy Decl. ¶ 60. These

individuals represented their employers in their official capacities and to identify them at the

present time could subject them to unofficial inquiries not anticipated by their contact with the

FBI. *Id.* Disclosure of this information could subject them to unnecessary public attention,

harassment, retaliation and/or physical harm. *Id.* No public interest would be served by

disclosing this information. *Id.* Moreover, such disclosure would constitute a clearly unwarranted

invasion of personal privacy and could reasonably be expected to constitute an unwarranted

invasion of personal privacy. *Id.*

### D. Exemption 7(D)

Exemption 7(D) of the FOIA exempts from mandatory disclosure records or information

compiled for law enforcement purposes if the disclosure:

> could reasonably be expected to disclose the identity of a confidential
> source, including a State, local, or foreign agency or authority or any
> private institution which furnished information on a confidential basis, and,
> in the case of a record or information compiled by a criminal law
> enforcement authority in the course of a criminal investigation or by an
> agency conducting a lawful national security intelligence investigation,
> information furnished by a confidential source.

5 U.S.C. § 552 (b)(7)(D). Exemption 7(D)'s "paramount objective" "is to keep open the

Government's channels of confidential information." *Birch v. United States Postal Serv.*, 803 F.2d 1206, 1212 (D.C. Cir. 1986). The term "confidential source" is broadly construed. *See, e.g., Gula v. Meese*, 699 F. Supp. 956, 960 (D.D.C. 1988) (crime victims); *Putnam v. United States Dept. of Justice*, 873 F. Supp. 705, 716 (D.D.C. 1995) (medical personnel). Moreover, the term "confidential" signifies that the information was provided in confidence or in trust, with the assurance that it would not be disclosed to others. *Dow Jones & Co. v. Dept. of Justice*, 917 F.2d 571, 575-76 (D.C. Cir. 1990). As such, "the question is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential." *United States Dept. of Justice v. Landano*, 508 U.S. 165, 172 (1993). A source's confidentiality is determined on a case-by-case basis. *Id*.

Numerous confidential sources report to the FBI on a regular basis and are "informants" within the common meaning of the term. Hardy Decl. ¶ 62. Some of these people provide information under an express assurance of confidentiality. *Id*. Other individuals are interviewed under circumstances from which an assurance of confidentiality can reasonably be inferred. *Id*. These individuals are considered to be confidential sources because they furnish information only with the understanding that their identities and the information they provide will not be released outside the FBI. *Id*. Information provided by these individuals is singular in nature and, if released, could reveal their identity. *Id*.

The FBI invoked FOIA Exemption 7(D), in conjunction with FOIA Exemptions 6 and 7(C), to protect the identify of and information received from an individual who provided information to the FBI and/or state or local law enforcement during the course of the

23

investigation.  Hardy Decl. ¶ 63, Fn. 20.  This individual was interviewed under circumstances

from which an assurance of confidentiality may be implied since he/she was providing sensitive

and secretive information involving Mr. Lazaridis which would reasonably raise fear of retaliation

if his/her identity were revealed.  *Id*.  If such information were disclosed, it would likely subject

the interviewee to harassment or reprisal.  *Id.*

 The preservation of the confidentiality of the identity and information provided by

individuals is essential to effective law enforcement.  *Id.*  Disclosure of such could have a

disastrous impact upon the ability of law enforcement to obtain this kind of information in the

future and would have a chilling effect upon the free-flow of information essential to pursuing and

resolving criminal investigations.  *Id*.

 The FBI also invoked FOIA Exemption 7(D) to exempt from disclosure the name and

other identifying information of a foreign government agency which provided information and

cooperated with the FBI under an express assurance of confidentiality.  Hardy Decl. ¶¶ 64, 65, Fn.

21.  This foreign government agency cooperated with the FBI and provided valuable information

with the express understanding that its identity and any information which would tend to identify

it would only be used for law enforcement purposes and would not be released to the public.  *Id.*

Due to the sensitive nature of the information provided by this foreign government and the FBI's

express assurance to keep this information confidential, this foreign government agency has a

reasonable expectation that its identity and the information and assistance that it provided to the

FBI would remain expressly confidential.  Hardy Decl. ¶ 65.

 Finally, FBI invoked FOIA Exemption 7(D) for six pages to protect information provided

to the FBI by the Ottawa County, Michigan Sheriff's Department on an implied assurance of

confidentiality.[2]  Hardy Decl. ¶ 66, Fn. 22.  The local sheriff's department provided reports and

information which it had compiled in connection with its investigation of a complaint filed in

regard to Mr. Lazaridis's alleged removal of his daughter out of the United States, including an

incident report.  Hardy Decl. ¶ 66.  Additionally, a local sheriff contacted an FBI Special Agent to

provide information, gathered by conducting interviews of third parties, concerning the

investigation.  *Id*.  Because the FBI relies on the close cooperation of federal, state and local law

enforcement agencies, any disclosure of this information would clearly result in harm to the FBI's

law enforcement endeavors.  *Id.*  Moreover, given the fact that this locality has an open criminal

case on Mr. Lazaridis it can reasonably be inferred that this information was provided under an

implied assurance of confidentiality.

## IV.  DOCUMENTS REFERRED TO OTHER FEDERAL GOVERNMENT AGENCIES FOR DIRECT RESPONSE TO MR. LAZARIDIS

The FBI identified pages, some in full and some in part, which had originated with two

other DOJ components, EOUSA and INTERPOL, and one other federal government agency,

Immigration and Customs Enforcement ("ICE").  Hardy Decl. ¶ 67.  In accordance with DOJ

regulations, 28 C.F.R. § 16.4, the FBI referred these documents to these other DOJ components

and government agency for direct response to Mr. Lazaridis.  *Id.*  EOUSA and INTERPOL have

described these records in their Vaughn Indexes or Declarations.  *Id*.  On July 2, 2010, ICE

released the 43 referred pages directly to Mr. Lazaridis.  *Id*., Exhibit U.

---

[2] It should be noted that Ottawa County, Michigan still has an outstanding felony arrest warrant for Mr. Lazaridis and, thus, an open criminal case.  *See Michigan v. Emmanuel Nicholas Lazaridis*, No. 04-28231-FY (October 7, 2004).

## V.  DOCUMENTS REFERRED TO ANOTHER FEDERAL GOVERNMENT AGENCY FOR CONSULTATION

The FBI also identified an additional ten pages which either originated with the U.S. Department of State ("DOS"), or contained DOS equities.  Hardy Decl. ¶ 68.  Following consultations between DOS and the FBI, it was determined that certain information in the ten pages would be redacted pursuant to FOIA Exemptions 2 and 5.  The discussion in ¶¶ 52 and 57, *supra*, address the redactions made by DOS.  *Id*.

## VI.  THE FBI PROPERLY WITHHELD RECORDS UNDER PRIVACY ACT EXEMPTION 5 U.S.C. § 552a(j)(2)

The records that the FBI located in response to Plaintiff's request are exempt from disclosure under the PA.  Hardy Decl. ¶ 34.  Specifically, subsection (j)(2) of the PA allows an agency to promulgate regulations exempting from mandatory disclosure:

> records maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of ...(B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a (j)(2).   In response to Mr. Lazaridis's requests, the FBI located responsive records which were compiled by the FBI as a result of a criminal investigation pursuant to 18 U.S.C. § 1204, into an alleged illegal relocation of Mr. Lazaridis's minor child outside the United States.   Hardy Decl. ¶ 35.  All of the records generated by the FBI as a result of its investigation into the activities of Mr. Lazaridis are part of the FBI's CRS, which is a Privacy Act system of

26

records.  *Id.*   The Attorney General has promulgated regulations at 28 C.F.R. § 16.96 (2007),

exempting these records from the Privacy Act's access provisions pursuant to 5 U.S.C.

§552a(j)(2).  *Id.*

## VII.   ALL REASONABLY SEGREGABLE MATERIAL
## HAS BEEN RELEASED TO PLAINTIFF

"The FOIA requires that '[a]ny reasonably segregable portion of a record shall be provided

to any person requesting such record after deletion of the portions which are exempt.'"  *Juarez v.*

*Department of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008) (citing 5 U.S.C. § 552(b)).  "This Circuit

has long recognized, however, that documents may be withheld in their entirety when nonexempt

portions 'are inextricably intertwined with exempt portions [of the record].'"  *Id.* (citing *Mead*

*Data Cent., Inc. v. United States Dept. Of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)).  "A

court may rely on government affidavits that show with reasonable specificity why documents

withheld pursuant to a valid exemption cannot be further segregated for this reason."  *Id.* (citing

*Armstrong v. Executive Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996).

The FOIA requires that if a record contains information that is exempt from disclosure,

any "reasonably segregable" information must be disclosed after deletion of the exempt

information unless the non-exempt portions are "inextricably intertwined with exempt portions."

5 U.S.C. § 552(b); *Mead Data Cent., Inc. v. United States Dept. of the Air Force*, 566 F.2d 242,

260 (D.C. Cir. 1977).  The Court of Appeals for the District of Columbia Circuit has held that a

District Court considering a FOIA action has "an affirmative duty to consider the segregability

issue *sua sponte.*"  *Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d

1022, 1028 (D.C. Cir. 1999).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements." *Mead Data*, 566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed.  *Id*.  All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996).  Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Mead Data*, 566 F.2d at 261, n.55.

The FBI's detailed coded format demonstrates that it has released all reasonably segregable information from the records responsive to Mr. Lazaridis's requests to the FBI.  Hardy ¶¶ 36-38.  The FBI carefully examined the responsive documents and determined that, if disclosed, the information withheld could reasonably be expected to risk circumvention of a statute or regulation, reveal Federal Grand Jury information, could cause unwarranted and clearly unwarranted invasion of the personal privacy interests of third parties and disclose information provided by confidential sources.  Hardy Decl. ¶ 69.  Accordingly, the FBI released all reasonably segregable information.  *Id.*

## **Conclusion**

For the foregoing reasons, Defendant DOJ should be granted partial summary judgment as

a matter of law with respect to the FBI's response to Plaintiff's FOIA requests.

<div style="margin-left: 40%;">

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney
For the District of Columbia
D.C. Bar No. 447889

RUDOLPH CONTRERAS
Chief, Civil Division

By:      /s/
JUDITH A. KIDWELL
Assistant United States Attorney
555 Fourth Street, N.W.-Civil Division
Room E4212
Washington, D.C.  20530
(202) 514-7250
Judith.A.Kidwell@usdoj.gov

</div>

29

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY, that copies of the foregoing Defendant U.S. Department of

Justice's Motion for Partial Summary Judgment, Memorandum of Points and Authorities, and

proposed order were mailed, postage pre-paid, to Emmanuel N. Lazaridis Plaintiff *pro se* on this

20th day of July 2010, to the following address:

Emmanuel N. Lazaridis
LAZARIDIS-KORTJIDAKIS
SMYRNIS 14
71305 HERAKLION, CRETE
GREECE
+30 693-902-7351


                                /s/

                          JUDITH A. KIDWELL
                          ASSISTANT UNITED STATES ATTORNEY

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **EMMANUEL N. LAZARIDIS**, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   **Civil Action No. 09-1177 (RMC)** |
| | ) |
| **UNITED STATES DEPARTMENT OF** | ) |
| **JUSTICE**, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER**

UPON CONSIDERATION OF Defendant United States Department of Justice's ("DOJ")

Motion for Partial Summary Judgment As To the Federal Bureau of Investigation,

any Opposition thereto, and the entire record in this case, it is this _____ day of _____,

2010,

**ORDERED** that Defendant DOJ's motion is **GRANTED.**

_____
UNITED STATES DISTRICT JUDGE

Copies to:

Counsel via ECF

Emmanuel N. Lazaridis
LAZARIDIS-KORTJIDAKIS
SMYRNIS 14
71305 HERAKLION, CRETE
GREECE
+30 693-902-7351