# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                    )
**EMMANUEL N. LAZARIDIS, *et al.*,**  )
                    )
       **Plaintiffs,**      )
                    )
     **v.**              )    **Civil Action No. 09-1177 (RMC)**
                    )
**UNITED STATES DEPARTMENT OF**  )
**JUSTICE, *et al.*,**         )
                    )
       **Defendants.**    )
_____ )

## UNITED STATES DEPARTMENT OF JUSTICE'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT
## AS TO INTERPOL-U.S. NATIONAL CENTRAL BUREAU

Defendant, the United States Department of Justice, through undersigned counsel,

respectfully moves the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for

partial summary judgment on the grounds that no genuine issue of material fact exists and that

Defendant is, therefore, entitled to judgment as a matter of law.  In support of its motion,

Defendant submits the attached Memorandum of Points and Authorities and the Declaration of

Allison M. Tanaka, Freedom of Information and Privacy Acts Specialist for Interpol-U.S.

National Central Bureau.  A proposed order is attached.

*Pro se* Plaintiff Emmanuel N. Lazaridis, will please take note that the assertions

contained in the accompanying  attachments in support of Defendant's motion will be accepted

by the Court as true unless Plaintiff submits his own affidavit or other documentary evidence

contradicting the assertions in Defendant's declarations and attachments.  *See Neal v. Kelly*, 963

F.2d 453, 456 (D.C. Cir. 1992), and Local Rule 7(h).  Furthermore, Rule 56(e) of the Federal

Rules of Civil Procedure provides that:

A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.  If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.  The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).

Because this is a dispositive motion, Defendant has not sought Plaintiff Emmanuel N. Lazaridis's consent before filing.  *See* LCvR 7(m).

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney
For the District of Columbia
D.C. Bar No. 447889

RUDOLPH CONTRERAS
Chief, Civil Division
D.C. Bar No. 434122

By:      /s/
JUDITH A. KIDWELL
Assistant United States Attorney
555 Fourth Street, N.W.-Civil Division
Room E4212
Washington, D.C.  20530
(202) 514-7250
Judith.A.Kidwell@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| **EMMANUEL N. LAZARIDIS**, *et al.*, ) | |
| ) | |
| **Plaintiffs**, ) | |
| ) | |
| **v.** ) | **Civil Action No. 09-1177 (RMC)** |
| ) | |
| **UNITED STATES DEPARTMENT OF** ) | |
| **JUSTICE**, *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**STATEMENT OF MATERIAL FACTS AS TO**
**WHICH THERE IS NO GENUINE ISSUE**

Pursuant to LCvR 7(h), Defendant, United States Department of Justice ("DOJ"), hereby

submits the following Statement of Material Facts As To Which There Is No Genuine Issue.

This statement is supported by the Declaration of Allison M. Tanaka, Freedom of Information

and Privacy Acts Specialist for INTERPOL-U.S. National Central Bureau ("USNCB") ("Tanaka

Decl.").

1.        INTERPOL is an international criminal police organization which was created in

1923 to ensure and promote the widest possible mutual assistance among all criminal police

authorities within the limits of the law existing in different countries.  Tanaka Decl. ¶ 53; *see*

www.interpol.int.

2.        INTERPOL has its General Secretariat in Lyon, France where experts in various

branches of law enforcement assist INTERPOL's 188 member countries in coordinating law

enforcement efforts by compiling and exchanging information on criminal activity.  *Id.*  The

General Secretariat operates 24 hours a day and is run by the Secretary General.  *See*

www.interpol.int.

3.      Each INTERPOL member country designates a national law enforcement agency, referred to as the member country's national central bureau ( "NCB"), to serve as a message and information exchange between that member country and INTERPOL.  *Id*.  Official inquiries emanating from law enforcement entities within a member country are channeled through its national central bureau to INTERPOL.  *Id*.  The route is reversed for responses.  *Id*.

4.      One of the USNCB's most important functions is to respond to inquiries from foreign law enforcement agencies for confidential source information gathered in the United States for law enforcement purposes.  Tanaka Decl. ¶ 54; *see* 22 U.S.C. § 263a.

5.      USNCB often requests information from foreign law enforcement agencies which may be of interest to domestic law enforcement organizations.   Tanaka Decl. ¶ 54.  The expectation of confidentiality in the exchange of this law enforcement information about criminal activity between member countries has been documented in resolutions adopted in 1974 and 1988 by the General Assembly, the governing body of INTERPOL.   Tanaka Decl. ¶¶ 54-55.

6.      USNCB has an open case involving Plaintiff Emmanuel N. Lazaridis due to an ongoing investigation by Ottawa County, Michigan.  Tanaka Decl. ¶ 47.

7.      By letter to USNCB dated August 22, 2005, Lazaridis requested records from 2002 to the present pertaining to himself and his minor daughter.  Tanaka Decl. ¶ 7, Exhibit A.  Lazaridis also requested a fee waiver and expedited processing of his requests.  *Id*.

8.      USNCB received Lazaridis's request on August 31, 2005, and subsequently, assigned his request FOIA number 2005-0131.  ¶¶ 7, 8.

9.      By letter dated September 1, 2005, USNCB informed Lazaridis that: (1) his

request for a fee waiver was denied; (2) his request for expedited processing was forwarded to the DOJ Public Affairs Office ("PAO"); and (3) a response regarding his records would be provided as soon as possible.  Tanaka Decl. ¶ 9, Exhibit B.

10.     USNCB conducted a search of its system of records and administrative files and located nine pages of records responsive to Lazaridis's request for his records and his daughter's records.  Tanaka Decl. ¶ 10.  The USNCB reviewed the nine records and determined that all of the records were related to an open investigation.  *Id.*

11.     By letter dated September 23, 2005, USNCB informed Lazaridis that:  (1) he had requested information on a third-party; (2) release of information about a living third party without the person's consent generally constitutes an unwarranted invasion of personal privacy in violation of 5 U.S.C. § 552(b); and (3) all nine pages of records located in response to the FOIA request were exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A).  Tanaka Decl. ¶ 10, Exhibit C.

12.     On September 30, 2005, the DOJ PAO denied Lazaridis's request for expedited processing.  *Id*.

13.     On November 18, 2005, USNCB received a copy of a letter, dated November 16, 2005, to Lazaridis from DOJ's Office of Information and Privacy ("OIP"), acknowledging his administrative appeal of USNCB's action.  Tanaka Decl. ¶ 11, Exhibit D.  Attached to OIP's letter was an appeal letter from Lazaridis to OIP dated October 31, 2005, appealing USNCB's response.  Tanaka Decl. ¶ 11, Exhibit E.   After receiving a copy of Lazaridis's appeal letter, USNCB forwarded to OIP all of the background information pertaining to Lazaridis's FOIA request.  Tanaka Decl. ¶ 11.

3

14.     On October 13, 2006, USNCB received a copy of OIP's letter to Lazaridis, dated October 11, 2006, advising him that DOJ does not honor requests (or related appeals) for documents made by individuals who are currently fugitives from justice.   Tanaka Decl. ¶ 12, Exhibit F.  The OIP denied the requests for both Lazaridis's records and his daughter's records. *Id.*

15.     By letter to USNCB dated November 13, 2008, Lazaridis enclosed two requests. Tanaka Decl. ¶ 13, Exhibit G.  One request was for records pertaining to Lazaridis and the other request was for his daughter's records.  *Id*.  Both requests sought records from 2002 to the present and a waiver of fees.  *Id*.  The requests were received by USNCB on December 5, 2008. *Id*.

16.     Lazaridis's request was assigned FOIA No. 2009-0064.  Tanaka Decl. ¶ 14.

17.     By letter dated December 8, 2008, USNCB denied the request stating that Lazaridis's request was the same as his August 22, 2005 request.  Tanaka Decl. ¶ 15, Exhibit H.

18.     On February 5, 2009, USNCB received a copy of a letter to Lazaridis from OIP dated February 3, 2009, acknowledging his administrative appeal from USNCB's action.  Tanaka Decl. ¶ 16, Exhibit I.  Attached to OIP's letter was an appeal letter from Lazaridis to OIP dated January 10, 2009, appealing USNCB's response.  Tanaka Decl. ¶ 16, Exhibit J.  By memorandum dated March 4, 2009, USNCB sent OIP all background information pertaining to Lazaridis's request.  Tanaka Decl. ¶ 16.

19.     On March 31, 2009, USNCB received a copy of OIP's letter to Lazaridis dated March 27, 2009, affirming USNCB's initial action with respect to Lazaridis's request for his daughter's records.  Tanaka Decl. ¶ 17, Exhibit K.   Based on OIP's letter, USNCB considered its

4

decision on Lazaridis's requests to be affirmed by OIP.  Tanaka Decl. ¶ 17.

20.     USNCB received a copy of the Court's Order dated May 26, 2010 in this action.

Tanaka Decl. ¶ 18.   Thereafter, USNCB conducted another search for records and located

additional records.  *Id*.  USNCB located 139 pages of records in its two searches.  *Id*.  All 139

pages were records responsive to Lazaridis's request for records pertaining to himself.  *Id*.

USNCB reviewed these records and determined that 100 of the 139 pages of records originated

with or were of primary interest to the FBI.  *Id*.  USNCB referred theses records to the FBI for

processing.  *Id*.

21.     On June 17, 2010, USNCB received a referral from the FBI consisting of a copy

of Lazaridis's request and 22 pages of records responsive to his request.  Tanaka Decl. ¶ 19.

USNCB reviewed the 22 pages of records referred from the FBI and the remaining 39 pages of

records from its search, totaling 61 pages.   Tanaka Decl. ¶ 20.   USNCB withheld all 61 pages

pursuant to FOIA Exemptions 2, 6, 7(A), 7(C), 7(D).  *Id*.  USNCB withheld  45 pages in full and

the other 16 pages because they were duplicates of some of the 45 pages.  *Id*.

22.     USNCB invoked FOIA Exemptions 7(A) and 7(D) to withhold a three-page FBI

memorandum to Legal Attache officers dated July 26, 2005, which described USNCB's

investigation and information received from a foreign National Central Bureau ("NCB").  Tanaka

Decl. ¶ 21.

23.     USNCB invoked FOIA Exemptions 6, 7(A), 7(C) and 7(D) to withhold a three-

page FBI document dated September 6, 2005, which contained information regarding USNCB's

investigation, a summary of a message received from a foreign NCB, and a USNCB's Program

Manager's name and telephone number.  Tanaka Decl. ¶ 22.

24.     USNCB invoked FOIA Exemptions 2 (High), 6, 7(A) and 7(C) to withhold an undated one-page Assistant Director's Notice Application Signoff containing a file checklist, internal procedures, a case number, a USNCN Manager's initials and an Assistant Director's signature.  Tanaka Decl. ¶ 23.

25.     USNCB invoked FOIA Exemptions 2 (High), 6, 7(A) and 7(C) to withhold a one-page document dated June 6, 2005, which contained Investigator and Prosecutor information referencing a USNCB case number, a Uniform Resource Locator of USNCB criminal database, and a FBI agent's name and telephone number.  Tanaka Decl. ¶ 24.

26.     USNCB invoked FOIA Exemptions 2 (High), 6, 7(A) and 7(C) to withhold a one-page Note to File for Electronic Submissions dated June 7, 2005, which contained a USNCB case number, internal procedures and a Program Manager's name and initials.  Tanaka Decl. ¶ 25.

27.     USNCB invoked FOIA Exemptions 2 (High), 6, 7(A) and 7(C) to withhold a three-page Blue Notice Application Form request, dated June 7, 2005, relating to the identification, criminal record or location of a person.  Tanaka Decl. ¶ 26.  These pages contained a Uniform Resource Locator of INTERPOL database, a USNCB case number, a USNCB's Program Manager's initials, and third-party information, including names, dates of birth and passport numbers.  *Id.*  Blue Notices trace and locate, or collect information about a person of interest in a criminal investigation.  Tanaka Decl. ¶ 27.

28.     USNCB invoked FOIA Exemptions 2 (High), 6, 7(A) and 7(C) to withhold a two-page Blue Notice, dated June 21, 2005, containing names of third parties, a USNCB's Program Manager's initials and a USNCB case number.  Tanaka Decl. ¶ 27.

6

29.     USNCB invoked FOIA Exemptions 2 (High), 6, 7(A) and 7(C) to withhold a two-page Blue Notice Application from the FBI, dated May 13, 2005, containing a USNCB case number and information pertaining third parties such as names, dates of birth and passport numbers.  Tanaka Decl. ¶ 28.

30.     USNCB invoked FOIA Exemptions 2(High) and 7(A) to withhold a one-page cover sheet of a Blue Notice Application from the FBI, dated May 26, 2005, containing a USNCB case number and Uniform Resource Locator of the USNCB criminal database.  Tanaka Decl. ¶ 29.

31.     USNCB invoked FOIA Exemptions 2 (High), 6,  7(A) and 7(C) to withhold a 7-page Blue Notice Application, dated May 12, 2005, containing third-party information such as names, dates of birth, social security numbers and passport numbers.  Tanaka Decl. ¶ 30.  These pages also contained the Uniform Resource Locator of the USNCB criminal database and a FBI agent's name, telephone number and signature.  *Id*.

32.     USNCB invoked FOIA Exemptions 2 (High), 6,  7(A) and 7(C) to withhold a three-page message, dated June 6, 2005,  from USNCB to all NCBs and INTERPOL's Notice Section providing law enforcement information and requesting investigative assistance.  These pages contain the USNCB case number, a USNCB's Program Manager's initials and third-party information such as names, dates of birth and passport numbers.  Tanaka Decl. ¶ 31.

33.     USNCB invoked FOIA Exemptions 2 (High), 6, 7(A) and 7(C) to withhold a two-page fax memorandum dated June 7, 2005, from USNCB to the FBI referencing an earlier conversation concerning Lazaridis.  Tanaka Decl. ¶ 32.  This memorandum explains the attached documents which provide law enforcement information and request investigative assistance.  *Id.*

34.     USNCB invoked FOIA Exemptions 2 (High), 6, 7(A), 7(C) and 7(D) to withhold a one-page e-mail message, dated July 4, 2005, from a USNCB analyst to a Program Manager attaching a message from a foreign NCB concerning Emmanuel N. Lazaridis.  Tanaka Decl. ¶ 33. The e-mail message contained a USNCB case number.  *Id.*

35.     USNCB invoked FOIA Exemptions  2 (High), 6, 7(A), and 7(C) to withhold a three-page message, dated June 7, 2005, from USNCB to all NCBs and INTERPOL's Notice Section.  Tanaka Decl. ¶ 34.  The message provides law enforcement information and requests investigative assistance.  *Id*.  The message contains a USNCB case number, a USNCB Program Manager's initials, and third-party information, including names, dates of births and passport numbers.  *Id*.

36.     USNCB invoked FOIA Exemptions 2 (High), 6, 7(A), and 7(C) to withhold a three-page message, dated June 7, 2005, from USNCB to all NCBs, INTERPOL's Notice Section and a foreign NCB.  Tanaka Decl. ¶ 35.  The message provides law enforcement information and requests investigative assistance.  *Id*.  The message contains a USNCB case number, a USNCB Program Manager's initials, and third-party information, including names, dates of births and passport numbers.  *Id*.

37.     USNCB invoked FOIA Exemptions 2 (High), 6, 7(A), 7(C) and 7(D) to withhold a three-page fax memorandum, dated July 14, 2005, from USNCB to the FBI concerning Emmanuel N. Lazaridis.  Tanaka Decl. ¶ 36.  The memorandum includes a message from a foreign NCB.  *Id.*

38.     USNCB invoked FOIA Exemptions 2 (High), 7(A) and 7(D) to withhold a one-page message, dated June 8, 2005, from INTERPOL Secretariat General responding to a USNCB

8

message concerning Emmanuel N. Lazaridis.  Tanaka Decl. ¶ 37.  This message contains a

USNCB case number.  *Id.*

40.     USNCB invoked FOIA Exemptions 2 (High), 7(A) and 7(D) to withhold a two-

page message, dated August 8, 2005, from a foreign NCB responding to a USNCB message

concerning  Emmanuel N. Lazaridis.  Tanaka Decl. ¶ 38.  This message contains a USNCB case

number and the Uniform Resource Locator of the USNCB database.  *Id.*

40.     USNCB invoked FOIA Exemptions 2 (High) and 7(A) to withhold a cover sheet

of a message, dated June 27, 2005, from the FBI concerning a Blue Notice.  Tanaka Decl. ¶ 39.

This message contains a USNCB case number and the Uniform Resource Locator of the USNCB

criminal database.

41.     USNCB invoked FOIA Exemptions 2 (High), 6, 7(A) and 7(C) to withhold a one-

page e-mail message, dated June 27, 2005, from a USNCB Supervisory analyst to a USNCB

Program Manager requesting that an attached document concerning Emmanuel N. Lazaridis be

placed into the case file.  Tanaka Decl. ¶ 40.  This e-mail contains a USNCB case number and

the names of USNCB personnel.  *Id*.

42.     USNCB determined that certain pages of the withheld documents were duplicates

of other pages.  Tanaka Decl. ¶¶ 41-46.

                              Respectfully submitted,

                              RONALD C. MACHEN JR.
                              United States Attorney
                              For the District of Columbia
                              D.C. Bar No. 447889

RUDOLPH CONTRERAS
Chief, Civil Division
D.C. Bar. No. 434122

By:       /s/
      JUDITH A. KIDWELL
      Assistant United States Attorney
      555 Fourth Street, N.W.-Civil Division
      Room E4212
      Washington, D.C.  20530
      (202) 514-7250
      Judith.A.Kidwell@usdoj.gov

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EMMANUEL N. LAZARIDIS,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) Civil Action No. 09-1177 (RMC) |
| | ) |
| **UNITED STATES DEPARTMENT OF** | ) |
| **JUSTICE,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNITED STATES DEPARTMENT OF JUSTICE'S MOTION FOR SUMMARY JUDGMENT AS TO INTERPOL-U.S. NATIONAL CENTRAL BUREAU

### Preliminary Statement

The complaint in this case was filed by Plaintiff, Emmanuel N. Lazaridis ("Mr. Lazaridis"), on behalf of himself and his minor child, V.L., naming as Defendants the U.S. Department of Justice ("DOJ"), the National Center for Missing and Exploited Children, and the International Centre for Missing and Exploited Children (hereafter "non-federal defendants"). Complaint ("Compl.") ¶¶ 4-6.   Mr. Lazaridis raised numerous claims and sought various relief, including relief under the Freedom of Information Act ("FOIA").[1]

On May 26, 2010, the Court granted the non-federal defendants' motion to dismiss them from this action.  *See* Docket No. 38, Memorandum Opinion.  Additionally, the Court ruled that it lacked jurisdiction over certain claims.  *Id.*[2]

---

[1] Mr. Lazaridis also sought to have himself declared the proper custodian of V.L. and to have the Court declare that he is not a fugitive.

[2] Mr. Lazaridis is seeking reconsideration of the Court's ruling.

Therefore, the claims still at issue pertain to Mr. Lazaridis's requests for his own records to three DOJ components, the Executive Office for the United States Attorneys, the United States National Central Bureau of INTERPOL[3] ("USNCB"), and the Federal Bureau of Investigation ("FBI").  Compl. ¶¶ 9-14.  Defendant DOJ now moves for partial summary judgment on the basis that USNCB has:  (1) conducted reasonable searches for records responsive to Mr. Lazaridis's FOIA requests; and (2) properly invoked the FOIA exemptions discussed below to withhold records.  Accordingly, Defendant DOJ should be granted partial summary judgment as to USNCB's response to Mr. Lazaridis's FOIA request for his records.

## STATEMENT OF FACTS

Defendant DOJ's Statement of Material Facts As To Which There Is No Genuine Issue sets forth the relevant facts and is incorporated herein.

## ARGUMENT

## I. STANDARDS OF REVIEW

### A.      Motion for Summary Judgment Under Rule 56

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   To determine which facts are material, the Court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether

---

[3] "INTERPOL" is the International Criminal Police Commission.

there exists a genuine issue of material fact sufficient to preclude summary judgment, the Court

must regard the non-movant's statements as true and accept all evidence and make all inferences

in the non-movant's favor. *Id.*, at 255.  A non-moving party, however, must establish more than

the "mere existence of a scintilla of evidence" in support of his position. *Id*. at 252.

### B.      Summary Judgment In FOIA Cases

For purposes of summary judgment, an agency's decision to withhold information from a

FOIA requester is subject to *de novo* review by the Courts. *Hayden v. National Security Agency*

*Cent. Sec. Serv.*, 608 F.2d 1381, 1384 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980).  In a

FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts

are in dispute and, if applicable, that each document that falls within the class requested either

has been produced, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v.*

*Dept. of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. U.S. Dept. of Justice*, 627 F.2d

365, 368 (D.C. Cir. 1980).  Summary judgment may be granted to an agency in a FOIA case

solely on the basis of agency affidavits or declarations if the "affidavits [or declarations] are

'relatively detailed, non-conclusory, and not impugned by evidence . . . of bad faith on the part of

the agency.'" *McGhee v. Central Intelligence Agency*, 697 F.2d 1095, 1102 (D.C. Cir. 1983);

*see also Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *Hayden v. National*

*Security Agency Cent. Sec. Serv.*, 608 F.2d at 1387.

## II.   USNCB CONDUCTED REASONABLE SEARCHES
## FOR RESPONSIVE RECORDS

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search

for responsive records. *Oglesby v. U.S. Dept. of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990);

*Weisberg v. U.S. Dept. of Justice*, 705 F.2d 1344, 1352 (D.C. Cir. 1983).  This "reasonableness" standard focuses on the method of the search, not its results, so that a search is not unreasonable simply because it fails to produce relevant material.  *Id.* at 777 n.4.  An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located.  *Oglesby v. U.S. Dept. of Aarmy*, 920 F.2d at 68.  Simply stated, the adequacy of  the search is "dependent upon the circumstances of the case." *Truitt v. Dept. of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

The search standards under FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located.  *Nation Magazine v. U.S. Customs Serv.,* 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  It has been held that " 'the search need only be reasonable; it does not have to be exhaustive.' " *Miller v. Dept. of State*, 779 F.2d 1378, 1383 (8th Cir. 1985) (citing *National Cable Television Association v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973).  Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent*.  Nation Magazine v. U.S. Customs Serv*, 71 F.3d at 892 n.7.  Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it.  *Maynard v. CIA*, 986 F.2d 546, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dept. of Army*, 920 F.2d at 68; *see SafeCard Servs. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).  "An agency may prove the reasonableness

of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith." *Miller v. Dept. of State,* 779 F.2d at 1383; *Goland v. CIA,* 607 F.2d 339, 352 (D.C. Cir. 1978). Though the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" *Carney v. Dept. of Justice*, 19 F.3d 807, 812 (2d Cir. 1994), *cert. denied*, 513 U.S. 823 (1994) *(quoting SafeCard Servs. v. SEC*, 926 F.2d at 1200), the burden rests with the agency to demonstrate the adequacy of its search. Once the agency has met this burden through a showing of convincing evidence, the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. *Miller v. Dept. of State,* 779 F.2d at 1383. A requester may not rebut agency affidavits with purely speculative allegations. *See Carney v. Dept. of Justice*, 19 F.3d at 813; *SafeCard v. SEC,* 926 F.2d at 1200; *Maynard v. CIA*, 986 F.2d at 559-560. The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate." *Steinberg v. Dept. of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (*quoting Weisberg v. Dept. of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

### A.     <u>USNCB's System of Records and FOIA Processing</u>

The USNCB's system of records consists of electronic and hard copy records of criminal and non-criminal case files which support the law enforcement and humanitarian functions conducted by the USNCB. Tanaka Decl. ¶ 2. These files contain numerous kinds of records, including, facsimiles, fingerprints, photographs, criminal investigative reports, applicant checks related to law enforcement and non-law enforcement employment, security, and regulatory matters, licenses, grants, contracts, or benefits. *Id*. They also contain related data, radio messages (international), log sheets, notices, bulletins or posters, temporary and permanent notices,

including identification information on an individual or item of interest to law enforcement
authorities (referred to as "lookouts"), investigative notes, computer printouts, letters,
memoranda, witness statements and records related to deceased persons.  *Id.*

Information about individuals may include their names, aliases, places and dates of birth,
addresses, physical descriptions, photographs, fingerprints, various identification numbers, the
reasons for the records or lookouts, and details and circumstances surrounding the actual or
suspected violations, humanitarian requests or administrative/operational matters.  *Id.*

In addition to the USNCB system of records, the USNCB maintains administrative files
consisting of non-investigative topical files of hard copies of records and correspondence, such as
files of FOIA requests and responses, records of litigation documents and documents related to
various policy issues.  Tanaka Decl. ¶ 3.

## B.  USNCB's Searches For Mr. Lazaridis's Records

USNCB searched the USNCB system of records and its administrative files for records
responsive to Mr. Lazaridis's request for his records.  Tanaka Decl.¶¶ 3, 4, 10.  USNCB located
nine pages of records.  Tanaka Decl. ¶ 10.  USNCB determined that all nine pages were related to
an open investigation.  *Id.*

After the Court's May 26, 2010 ruling, USNCB conducted another search for Mr.
Lazaridis's records and located additional records.  Tanaka Decl. ¶ 18.  The records located in
USNCB's two searches total 139 pages of records responsive to Mr. Lazaridis's request.  *Id.*
USNCB reviewed these records and determined that 100 of the 139 pages of records originated
with or were of primary interest to the FBI.  *Id.*  USNCB referred theses records to the FBI for
processing.  *Id.*

On June 17, 2010, USNCB received a referral from the FBI consisting of a copy

of Lazaridis's request and 22 pages of records responsive to his request.  Tanaka Decl. ¶ 19.

USNCB reviewed the 22 pages of records referred from the FBI and the remaining 39 pages of

records from its search, totaling 61 pages.   Tanaka Decl. ¶ 20.

### III.  THE USNCB PROPERLY INVOKED FOIA EXEMPTIONS 2, 6, 7(A), AND 7(D) TO WITHHOLD RESPONSIVE RECORDS

USNCB withheld the total 61 pages of records pursuant to FOIA Exemptions 2, 6, 7(A),

7(C), 7(D).  Tanaka Decl. ¶ 20.  USNCB withheld 45 pages in full and the other 16 pages because

they were duplicates of some of the 45 pages.  *Id*.   As discussed below, USNCB properly invoked

the following FOIA exemptions to withhold these records.

### A.      Exemption 2

"Exemption 2,  5 U.S.C. § 552(b)(2), permits an agency to withhold information 'related

solely to the internal personnel rules and practices of an agency.'"  *Stolt-Nielsen Transportation*

*Group LTD. v. United States*, 534 F.3d 728, 732 (D.C. Cir. 2008).   The agency must show that

the materials are "predominant[ly] internal []."  *Sussman v. United States Marshals Service*, 494

F.3d 1106, 1112 (D.C. Cir. 2007) (quoting *Schwaner v. Dept. of the Air Force*, 898 F.2d 793, 795

(D.C. Cir. 1990); *see also Stolt-Nielsen Transportation Group LTD. v. United States*, 534 F.3d at

732.

Thus, Exemption 2 applies primarily to two categories of materials: (1) internal agency

matters so routine or trivial that they could not be "subject to ... a genuine and significant public

interest;" and (2) internal agency matters of some public interest "where disclosure may risk

circumvention" of statutes or agency regulations.  *Dept. of the Air Force v. Rose*, 425 U.S. 352,

369-70 (1976); *National Treasury Employees Union v. U.S. Customs Service*, 802 F.2d 525, 528-30 (D.C. Cir. 1986); *Crooker v. ATF*, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981) (*en banc*) (holding that ATF manual describing law enforcement surveillance techniques qualified as predominantly internal and exempt from disclosure).   The first category is known as the "low 2" exemption. *Public Citizen, Inc. v. OMB*, 598 F.3d 865, 869 (D.C. Cir. 2010) (citing *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (internal quotations marks omitted)).   The second category, known as the "high (b)(2) exemption," *see Schiller v. NLRB*, 964 F.2d at 1207, applies to predominantly internal materials if their disclosure "significantly risks circumvention of agency regulations or statutes."   *Public Citizen, Inc. v. OMB*, 598 F.3d 869 (citing *Stolt-Nielsen Transportation Group LTD. v. United States*, 534 F.3d at 732) (internal quotation marks omitted)).

   USNCB withheld the USNCB investigative case file number and the Uniform Resource Locator or the USNCB database pursuant to FOIA Exemption 2 (High).   Tanaka Decl. ¶ 48. Disclosure of this information would allow an individual knowledgeable in computer mainframes and systems to try to circumvent the database and interfere with investigations.   *Id.*[4]   *See Singh v. FBI*, 574 F. Supp.2d 32, 44-45 (D.D.C. 2008) (protecting ICE "distribution and apprehension codes" whose disclosure would facilitate improper access to ICE computer systems).

### B. Exemption 7(A)

   FOIA exemption 7(A) permits non-disclosure of "records or information compiled for law

---

[4] These items are also internal agency matters so routine or trivial that they could not be "subject to ... a genuine and significant public interest" and would also qualify for exemption pursuant to FOIA Exemption 2 (low). *See Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992).

enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). This exemption applies equally to enforcement proceedings in state courts. *See Butler v. Dep't of Air the Force*, 888 F. Supp. 174, 182-83 (D.D.C. 1995) (explaining that release could jeopardize pending state criminal proceeding), *aff'd per curiam*, No. 96-5111 (D.C. Cir. May 6, 1997). Moreover, the "language of the statute makes no distinction between foreign and domestic enforcement purposes." *Bevis v. Dep't of State*, 801 F.2d 1386, 1388 (D.C. Cir. 1986) (citing *Shaw v. FBI*, 749 F.2d 58, 64 (D.C. Cir. 1984). An agency "may continue to invoke Exemption 7(A) to withhold the requested documents until . . . [the law enforcement proceeding] comes to a conclusion." *Kay v. FCC*, 976 F.Supp. 23, 37-38 (D.D.C. 1997).

There is no question that USCNB as the designated INTERPOL contact performs law enforcement functions and compiles records for law enforcement purposes. *See* 22 U.S.C. § 263A, 28 C.F.R 0.34; *see also Founding Church of Scientology v. Regan*, 670 F.2d 1158, 1159 (D.C. Cir. 1981), *cert. denied* 456 U.S. 976 (1982); *Meadows v. Mudasey*, 555 F. Supp.2d 205, 207 (D.D.C. 2008) (recognizing USNCB as the agency responsible for facilitating U.S. law enforcement cooperation with INTERPOL); *Badalamenti v. Dept. of State*, 899 F.Supp. 542 (D.D.C. 1995) (recognizing INTERPOL's law enforcement function and upholding its application of FOIA Exemption 7(D); *Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 315-16 (1991) ("It is undisputed, however, that the Guggenheim did not inform other museums, . . . and additionally, did not notify the New York Police, the FBI, Interpol or any other law enforcement authorities.")).

In this case, USCNB has an open investigation because of the outstanding felony arrest warrant for and ongoing investigation of Mr. Lazaridis in Ottawa County, Michigan.  Tanaka Decl. ¶ 47;  *see also Michigan v. Emmanuel Nicholas Lazaridis*, No. 04-28231-FY (October 7, 2004).

Thus, USCNB invoked FOIA Exemption 7(A) to withhold:

- a three-page FBI memorandum to Legal Attache officers dated July 26, 2005, which described USNCB's investigation and information received from a foreign National Central Bureau ("NCB").  Tanaka Decl. ¶ 21.

- a three-page FBI document dated September 6, 2005, which contained information regarding USNCB's investigation, a summary of a message received from a foreign NCB, and a USNCB's Program Manager's name and telephone number.  Tanaka Decl. ¶ 22.

- an undated one-page Assistant Director's Notice Application Signoff containing a file checklist, internal procedures, a case number, a USNCN Manager's initial's and an Assistant Director's signature.  Tanaka Decl. ¶ 23.

- a one-page document dated June 6, 2005, which contained Investigator and Prosecutor information referencing a USNCB case number, a Uniform Resource Locator of USNCB criminal database, and a FBI agent's name and telephone number.  Tanaka Decl. ¶ 24.

- a one-page Note to File for Electronic Submissions dated June 7, 2005, which contained a USNCB case number, internal procedures and a Program Manager's name and initials. Tanaka Decl. ¶ 25.

- a three-page Blue Notice Application Form request, dated June 7, 2005, relating to the identification, criminal record or location of a person.  Tanaka Decl. ¶ 26. Blue Notices

trace and locate, or collect information about a person of interest in a criminal

investigation.  Tanaka Decl. ¶ 27.

• a two-page Blue Notice, dated June 21, 2005, containing names of third parties, a

USNCB's Program Manager's initials and a USNCB case number.  Tanaka Decl. ¶ 27.

• a two-page Blue Notice Application from the FBI, dated May 13, 2005, containing a

USNCB case number and information pertaining third parties such as names, dates of birth

and passport numbers.  Tanaka Decl. ¶ 28.

• a one-page cover sheet of a Blue Notice Application from the FBI, dated May 26, 2005,

containing a USNCB case number and Uniform Resource Locator of the USNCB criminal

database.  Tanaka Decl. ¶ 29.

• a 7-page Blue Notice Application, dated May 12, 2005, containing third-party information

such as names, dates of birth, social security numbers and passport numbers.  Tanaka

Decl. ¶ 30.  These pages also contained the Uniform Resource Locator of the USNCB

criminal database and a FBI agent's name, telephone number and signature.  *Id.*

• a three-page message, dated June 6, 2005,  from USNCB to all NCBs and INTERPOL's

Notice Section providing law enforcement information and requesting investigative

assistance.  These pages contain the USNCB case number, a USNCB's Program

Manager's initials and third-party information such as names, dates of birth and passport

numbers.  Tanaka Decl. ¶ 31.

• a two-page fax memorandum dated June 7, 2005, from USNCB to the FBI referencing an

earlier conversation concerning Lazaridis.  Tanaka Decl. ¶ 32.  This memorandum

explains the attached documents which provide law enforcement information and request

11

investigative assistance. *Id.*

• a one-page e-mail message, dated July 4, 2005, from a USNCB analyst to a Program
Manager attaching a message from a foreign NCB concerning Emmanuel N. Lazaridis.
Tanaka Decl. ¶ 33.  The e-mail message contained a USNCB case number. *Id.*

• a three-page message, dated June 7, 2005, from USNCB to all NCBs and INTERPOL's
Notice Section.  Tanaka Decl. ¶ 34.  The message provides law enforcement information
and requests investigative assistance. *Id.*  The message contains a USNCB case number, a
USNCB Program Manager's initials, and third-party information, including names, dates
of births and passport numbers. *Id.*

• a three-page message, dated June 7, 2005, from USNCB to all NCBs, INTERPOL's
Notice Section and a foreign NCB.  Tanaka Decl. ¶ 35.  The message provides law
enforcement information and requests investigative assistance. *Id.*  The message contains
a USNCB case number, a USNCB Program Manager's initials, and third-party
information, including names, dates of births and passport numbers. *Id.*

• a three-page fax memorandum, dated July 14, 2005, from USNCB to the FBI concerning
Emmanuel N. Lazaridis.  Tanaka Decl. ¶ 36.  The memorandum includes a message from
a foreign NCB. *Id.*

• a one-page message, dated June 8, 2005, from INTERPOL Secretariat General responding
to a USNCB message concerning Emmanuel N. Lazaridis.  Tanaka Decl. ¶ 37.  This
message contains a USNCB case number. *Id.*

• a two-page message, dated August 8, 2005, from a foreign NCB responding to a USNCB
message concerning  Emmanuel N. Lazaridis.  Tanaka Decl. ¶ 38.  This message contains

a USNCB case number and the Uniform Resource Locator of the USNCB database.  *Id.*

- a cover sheet of a message, dated June 27, 2005, from the FBI concerning a Blue Notice. Tanaka Decl. ¶ 39.  This message contains a USNCB case number and the Uniform Resource Locator of the USNCB criminal database.  *Id*.

- a one-page e-mail message, dated June 27, 2005, from a USNCB Supervisory analyst to a USNCB Program Manager requesting that an attached document concerning Emmanuel N. Lazaridis be placed into the case file.  Tanaka Decl. ¶ 40.  This e-mail contains a USNCB case number and the names of USNCB personnel.  *Id*.

- USNCB determined that certain pages of the withheld documents were duplicates

of other pages, and were, therefore, also withheld.  Tanaka Decl. ¶¶ 41-46.

### C.  Exemptions 6 and 7(C)

### 1.  Exemption 6

Exemption 6 of the FOIA protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."  *Lepelletier v.  FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999), *quoting Dept. of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982).  The Court has also emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person."  *U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 763 (1989).

In order to determine whether there would be a "clearly unwarranted invasion of personal privacy," the Court must balance the interests of protecting "an individual's private affairs from

13

unnecessary public scrutiny," and "the public's right to governmental information." *Lepelletier v. FDIC*, 164 F.3d at 46 (interior quotation marks omitted), citing *United States Dept. of Defense v. FLRA*, 964 F.2d 26, 29 (D.C. Cir. 1992), *quoting Dept. of Air Force v. Rose*, 425 U.S. 352, 372 (1976).  In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA:  "[T]he *only* relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"  *Lepelletier v. FDIC*, 164 F.3d at 46 (editing by the court, emphasis supplied, interior quotation marks omitted), quoting *United States Dept. of Defense v. FLRA*, 510 U.S. 487, 497 (1994).  *See also Reporters Committee*, 489 U.S. at 773.  Information that does not directly reveal the operation or activities of the federal government "falls outside the ambit of the public interest that the FOIA was enacted to serve."  *Id.* at 775.  Further, "something, even a modest privacy interest, outweighs nothing every time." *National Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989); *but see Lepelletier v. FDIC*, 164 F.3d at 48 (in extraordinary circumstance where the individuals whose privacy the government seeks to protect have a "clear interest" in release of the requested information, the balancing under Exemption 6 must include consideration of that interest).

2.      **Exemption 7(C)**

The Supreme Court affirmed the broad scope of Exemption 7(C) in *National Archives and Records Admin. v. Favish*, 541 U.S. 157 (2004).  Exemption 7(C) authorizes the government to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be

expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  In order to trigger the balancing of public interests against private interests, a FOIA requester must (1) "show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and (2) " show the information is likely to advance that interest." *Boyd v. Criminal Division of U.S. Dept. of Justice,* 475 F.3d 381, 366, (D.C. Cir. 2007), *citing Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172, (2004).  If the public interest is government wrongdoing, then the requester must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. at 174.

When a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." *Keys v. U.S. Dept. of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987), citing *Pratt v. Webster,* 673 F.2d 408, 418 (D.C. Cir. 1982).  A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'" *Keys v. U.S. Dept. of Justice*, 830 F.2d at 340, quoting *Pratt v. Webster*, 673 F.2d at 421.  Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files.  *See, e.g., U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 776-80 (1989).  Only where the requester can produce meaningful evidence  –  "more than a bare suspicion" – which would cause a reasonable

15

person to believe that the government had engaged in impropriety should the Court even consider

balancing the privacy interests against the public interest in disclosure. *Nat'l Archives & Records*

*Admin. v. Favish*, 541 U.S. at 174.

### 3.  Mr. Lazaridis's Records

USNCB invoked FOIA Exemptions 6 and 7(C) to withhold the names and initials of the

law enforcement personnel assigned to the case and identifying information of other individuals

involved in or connected to the open investigation.  Tanaka Decl. ¶¶ 27, 49-50.  Disclosure of this

information could impair the effectiveness of the law enforcement personnel in the conduct of

their official duties by exposing them to undue pressure from Mr. Lazaridis and others who may

seek to obtain access to information or affect the outcome of USNCB investigations.  *Id.*

Disclosure of the names of individuals and their identifying information would constitute an

unwarranted invasion of their privacy and would not shed light on the operations of USNCB.  *See*

*Nations Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995); *Schoenman v. FBI*,

575 F.Supp. 2d 136, 159 (D.D.C. 2008).

### Exemption 7(D)

_____Exemption 7(D) of the FOIA exempts from mandatory disclosure records or information

compiled for law enforcement purposes if the disclosure:

> could reasonably be expected to disclose the identity of a confidential
> source, including a State, local, or foreign agency or authority or any
> private institution which furnished information on a confidential basis, and,
> in the case of a record or information compiled by a criminal law
> enforcement authority in the course of a criminal investigation or by an
> agency conducting a lawful national security intelligence investigation,
> information furnished by a confidential source.

5 U.S.C. § 552 (b)(7)(D).  Exemption 7(D)'s "paramount objective" "is to keep open the

Government's channels of confidential information."  *Birch v. United States Postal Serv.*, 803

F.2d 1206, 1212 (D.C. Cir. 1986).  The term "confidential source" is broadly construed.  *See, e.g.,*

*Gula v. Meese*, 699 F. Supp. 956, 960 (D.D.C. 1988) (crime victims); *Putnam v. United States*

*Dept. of Justice*, 873 F. Supp. 705, 716 (D.D.C. 1995) (medical personnel).  Moreover, the term

"confidential" signifies that the information was provided in confidence or in trust, with the

assurance that it would not be disclosed to others.  *Dow Jones & Co. v. Dept. of Justice*, 917 F.2d

571, 575-76 (D.C. Cir. 1990).  As such, "the question is not whether the requested document is of

the type that the agency usually treats as confidential, but whether the particular source spoke with

an understanding that the communication would remain confidential."  *United States Dept. of*

*Justice v. Landano*, 508 U.S. 165, 172 (1993).

INTERPOL is an international criminal police organization which was created in 1923 to

ensure and promote the widest possible mutual assistance among all criminal police authorities

within the limits of the law existing in different countries.  Tanaka Decl. ¶ 53; *see*

www.interpol.int.  Each INTERPOL member country designates a national law enforcement

agency, referred to as the member country's national central bureau ( "NCB"), to serve as a

message and information exchange between that member country and INTERPOL.  *Id*.  Official

inquiries emanating from law enforcement entities within a member country are channeled

through its national central bureau to INTERPOL.  *Id*.  The route is reversed for responses.  *Id.*

One of the USNCB's most important functions is to respond to inquiries from

foreign law enforcement agencies for confidential source information gathered in the United

States for law enforcement purposes.  Tanaka Decl. ¶ 54; *see* 22 U.S.C. § 263a.  USNCB often

requests information from foreign law enforcement agencies which may be of interest to domestic

law enforcement organizations.   Tanaka Decl. ¶ 54.  The expectation of confidentiality in the

exchange of this law enforcement information about criminal activity between member countries

has been documented in resolutions adopted in 1974 and 1988 by the General Assembly, the

governing body of INTERPOL.   Tanaka Decl. ¶¶ 54-55.  Thus, USNCB properly invoked FOIA

Exemption 7(D) to withhold the records at issue here.

## V.  ALL REASONABLY SEGREGABLE MATERIAL
## HAS BEEN RELEASED TO PLAINTIFF

"The FOIA requires that '[a]ny reasonably segregable portion of a record shall be provided

to any person requesting such record after deletion of the portions which are exempt.'"  *Juarez v.*

*Department of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008) (citing 5 U.S.C. § 552(b)).  "This Circuit

has long recognized, however, that documents may be withheld in their entirety when nonexempt

portions 'are inextricably intertwined with exempt portions [of the record].'"  *Id*. (citing *Mead*

*Data Cent., Inc. v. United States Dept. Of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)).  "A

court may rely on government affidavits that show with reasonable specificity why documents

withheld pursuant to a valid exemption cannot be further segregated for this reason."  *Id.* (citing

*Armstrong v. Executive Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996).

Here, USNCB withheld all of the responsive records not referred to other agencies in full

pursuant to FOIA Exemption 7(A) because there is an open investigation.  Tanaka Decl. ¶ 47.

Thus, none of the withheld records are segregable.   Moreover, USNCB also properly withheld the

USNCB investigative case number and the Uniform Resource Locator of the USNCB database

under FOIA Exemption 2 and the names of individuals and law enforcement personnel under

18

FOIA Exemptions 6 and 7(C).  Therefore, there is no reasonably segregable portion of a record to be provided to Mr. Lazaridis.  *Juarez v. Department of Justice*, 518 F.3d at 61.

## <u>Conclusion</u>

For the foregoing reasons, Defendant DOJ should be granted partial summary judgment as a matter of law with respect to USNCB's response to Plaintiff's FOIA request.


Respectfully submitted,
RONALD C. MACHEN JR.
United States Attorney
For the District of Columbia
D.C. Bar No. 447889

RUDOLPH CONTRERAS
Chief, Civil Division
D.C. Bar No. 434122


By:      _____/s/_____
JUDITH A. KIDWELL
Assistant United States Attorney
555 Fourth Street, N.W.-Civil Division
Room E4212
Washington, D.C.  20530
(202) 514-7250
Judith.A.Kidwell@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that copies of the foregoing Defendant U.S. Department of

Justice's Motion for Partial Summary Judgment As To INTERPOL-U.S. National Central Bureau,

Memorandum of Points and Authorities, Statement of Material Facts As To Which there is No

Genuine Issue and proposed order were mailed, postage pre-paid, to Emmanuel N. Lazaridis

Plaintiff *pro se* on this 20th day of July 2010, to the following address:

Emmanuel N. Lazaridis
LAZARIDIS-KORTJIDAKIS
SMYRNIS 14
71305 HERAKLION, CRETE
GREECE
+30 693-902-7351


          /s/
          JUDITH A. KIDWELL
          ASSISTANT UNITED STATES ATTORNEY

20

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| **EMMANUEL N. LAZARIDIS**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 09-1177 (RMC)** |
| | ) | |
| **UNITED STATES DEPARTMENT OF JUSTICE**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**ORDER**

UPON CONSIDERATION OF Defendant United States Department of Justice's ("DOJ")

Motion for Partial Summary Judgment As To INTERPOL-U.S. National Central Bureau,

any Opposition thereto, and the entire record in this case, it is this _____ day of _____,

2010,

      **ORDERED** that Defendant DOJ's motion is **GRANTED.**

                             _____
                             UNITED STATES DISTRICT JUDGE

Copies to:

Counsel via ECF

Emmanuel N. Lazaridis
LAZARIDIS-KORTJIDAKIS
SMYRNIS 14
71305 HERAKLION, CRETE
GREECE
+30 693-902-7351