**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **EMMANUEL N. LAZARIDIS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  **Civ. Action No. 09-1177 (RMC)** |
| | ) |
| **UNITED STATES** | ) |
| **DEPARTMENT OF JUSTICE** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM OPINION**

In this *pro se* civil action, plaintiff Emmanuel N. Lazaridis, seeks records under

the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, from the United States Department of

Justice ("DOJ"), the National Center for Missing and Exploited Children ("NCMEC") and the

International Centre for Missing and Exploited Children ("ICMEC"). Both NCMEC and ICMEC

have been dismissed from the case. *See* Order of May 26, 2010 [Dkt. # 39]. DOJ has moved

separately for partial summary judgment as to the Executive Office for United States Attorneys

("EOUSA") [Dkt. # 46], the Federal Bureau of Investigation ("FBI") [Dkt. # 47], and

INTERPOL-U.S. National Central Bureau ("USNCB" or "INTERPOL") [Dkt. # 48]. Mr.

Lazaridis has opposed each motion and DOJ has filed replies. Upon consideration of the parties'

submissions and the relevant parts of the record, the Court will grant in part and deny in part

DOJ's motions as to EOUSA and the FBI and will deny the motion as to USNCB.

# I. BACKGROUND

Mr. Lazaridis, who resides in Greece, alleges that on August 22, 2005, he submitted three FOIA requests to DOJ for records maintained by EOUSA, the FBI and USNCB. Compl. ¶ 9. He requested "written audio, video or electronic records" pertaining to himself and V.L. "dating from 2002 to 2005." *Id*. ¶ 10. DOJ denied Mr. Lazaridis' requests because of his alleged fugitive status. *Id*. ¶ 11. On November 13, 2008, Mr. Lazaridis submitted four requests to DOJ for the same type of records but "dating from 2002 to 2008." *Id*. ¶ 13. USNCB denied Mr. Lazaridis' request for V.L.'s records based on its determination that he was in violation of two state court judgments awarding custody of V.L. to his ex-wife and, thus, "lack[ed] the capacity to make a [FOIA] request for [his] daughter's records on her behalf[.]" *Id*. ¶ 14 (quoting "Denial of March 27, 2009").

Mr. Lazaridis filed this civil action on June 29, 2009. On May 26, 2010, the Court rejected DOJ's argument that the fugitive disentitlement doctrine applied to this case and denied its motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See* Mem. Op. [Dkt. # 38] at 9. DOJ has now processed Mr. Lazaridis' FOIA request. The results are summarized as follows.

## 1. EOUSA Records

By letter of July 2, 2010, EOUSA released to Mr. Lazaridis 32 pages of responsive material, 19 of which were redacted, and withheld 244 pages in their entirety. Second Decl. of Dione Jackson Sterns ("Second Sterns Decl.") [Dkt. # 46-1], Ex. H. EOUSA also referred 13 pages to the FBI and informed Mr. Lazaridis that he could obtain public records in its possession from the court or by submitting a new request that would be subject to copying fees. EOUSA withheld information under FOIA exemptions 3, 5, 6 and 7(C), *see* U.S.C. § 552(b), and

Privacy Act exemption (j)(2), 5 U.S.C. § 552a. *Id.* By letter of July 6, 2010, EOUSA, with regard to records referred from the FBI, released one redacted page and withheld six pages of information, one of which was determined non-responsive to the request. It withheld information under FOIA exemptions 5, 6 and 7(C) and Privacy Act exemption (j)(2). Supp. Decl. of Dione Jackson Sterns ("Sterns Supp. Decl.") [Dkt. # 63-1], Ex. BB [Dkt. # 63-2].

2. FBI Records

By letters of June 11, 2010, and June 22, 2010, the FBI released to Mr. Lazaridis a total of 505 pages of responsive material, 231 of which were redacted, and withheld 840 pages in their entirety. Second Decl. of David M. Hardy ("Second Hardy Decl") [Dkt. # 47-1] ¶ 33. This determination included 97 pages referred from INTERPOL and 13 pages referred from EOUSA. *Id.* The FBI withheld information under FOIA exemptions 2, 3, 6, 7(C) and 7(D) and Privacy Act exemption (j)(2). *Id.*

3. USNCB Records

Following the Court's ruling, USNCB conducted a search, located 139 pages of responsive records – nine of which had been previously located by a search conducted in 2005 – and referred 100 of those pages to the FBI for processing. Decl. of Allison M. Tanaka ("Tanaka Decl.") [Dkt. # 48-1] ¶¶ 10, 18. In June 2010, USNCB processed the remaining 39 pages and 22 pages referred from the FBI and determined that none of the pages could be released to Mr. Lazaridis. USNCB invoked FOIA exemptions 2, 6, 7(A), 7(C) and 7(D). *Id.* ¶ 21. USNCB has since withdrawn its invocation of exemption 7(A) "and will be releasing certain information/documents for which this exemption was initially claimed." Second Decl. of Allison M. Tanaka ("Second Tanaka Decl.") [Dkt. # 66-1] ¶ 3.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows [through facts supported in the record] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This procedural device is not a "disfavored legal shortcut" but a reasoned and careful way to resolve cases fairly and expeditiously. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). In determining whether a genuine issue of material fact exists, the Court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

Summary judgment is the frequent vehicle for resolution of a FOIA action because the pleadings and declarations in such cases often provide undisputed facts on which the moving parties are entitled to judgment as a matter of law. *McLaughlin v. U.S. Dep't of Justice*, 530 F. Supp.2d 210, 212 (D.D.C. 2008) (citations omitted). Agencies may rely on affidavits or declarations of government officials, as long as they are sufficiently clear and detailed and submitted in good faith. *See Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The Court may award summary judgment solely on the basis of information provided in such affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973), *cert. denied*,

415 U.S. 977 (1974).  However, the Court must "construe FOIA exemptions narrowly in favor of

disclosure."  *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993).

       An inadequate search for records also constitutes an improper withholding under

the FOIA.  *See Maydak v. U.S. Dep't of Justice*, 254 F. Supp. 2d 23, 44 (D.D.C. 2003) (citations

omitted).  Thus, when an agency's search is questioned, the Court must determine the adequacy

of the agency's search, guided by principles of reasonableness.  *See Campbell v. U.S. Dep't of

Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998).  The agency is required "to make a good faith effort to

conduct a search for the requested records, using methods which can reasonably be expected to

produce the information requested."  *Oglesby*, 920 F.2d at 68.  Such methods include following

through "on obvious leads."  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir.

1999) (citation omitted).  Although an agency need not search every record system, it "cannot

limit its search to only one record system if there are others that are likely to turn up the

information requested."  *Oglesby*, 920 F.2d at 68.  Because the agency is the possessor of the

records and is responsible for conducting the search, the Court may rely on "[a] reasonably

detailed affidavit, setting forth the search terms and the type of search performed, and averring

that all files likely to contain responsive materials (if such records exist) were searched."

*Valencia-Lucena*, 180 F.3d at 326 (quoting *Oglesby*, 920 F.2d at 68).  Summary judgment is

inappropriate "if a review of the record raises substantial doubt" about the adequacy of the

search.  *Id*.  "[T]he [mere] fact that a particular document was not found does not demonstrate

the inadequacy of a search," however.  *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d

381, 390-91 (D.C. Cir. 2007)  (citations omitted); *see Iturralde v. Comptroller of Currency*, 315

F.3d 311, 315 (D.C. Cir. 2003) ("the adequacy of a FOIA search is generally determined not by

the fruits of the search, but by the appropriateness of the methods used to carry out the search.")
(citation omitted).

## III. ANALYSIS

<u>EOUSA's Response</u>

Mr. Lazaridis challenges EOUSA's withholding of responsive material under
FOIA exemptions 3, 5, 6 and 7(C) and questions the adequacy of its search. Pl.'s Mem. of Law
in Opp'n to Def. United States Dep't of Justice's Mot. for Partial Summ. J. as to the EOUSA
("Pl.'s Opp'n Mem.") [Dkt. # 55] at 1.

*A. EOUSA's Search for Records*

In his request dated August 22, 2005, and addressed to EOUSA in Washington,
D.C., Mr. Lazaridis stated that "[i]n addition to records that may be stored at your central
location, additional records may exist in your field offices in the Western District of the State of
Michigan, particularly in the offices of United States Attorney Margaret Chiara and Assistant
United States Attorney Michael MacDonald." Second Stearns. Decl., Ex. A [Dkt. # 46-2] at 1.
EOUSA is the administrative arm of the 94 United States Attorney's Offices ("USAO") located
throughout the country. Stearns Supp. Decl. ¶ 2. Because USAO files "are located in 100
separate offices . . . EOUSA requires requesters to identify the specific U.S. Attorney's office(s)
where the requester believes the requested records exist." *Id*. ¶ 3. Based on the information Mr.
Lazaridis provided in his request, EOUSA "asked the [USAO] for the Western District of
Michigan (WDMI) to conduct a [search for responsive records]," *id*. ¶ 5, which it did via "[t]he
computer case tracking system, the Legal Information Office Network System ("LIONS") . . . ."
Second Stearns Decl. ¶ 17. Paralegal Kristina Zelasko in the WDMI, confirms that in 2005, she

searched LIONS by Mr. Lazaridis' name and "was able to ascertain the USAO number . . . and to confirm" the identity of the requester.[1]  Decl. of Kristina Zelasko ("Zelasko Decl.") [Dkt. # 46-2, Ex. J] ¶ 5.

On November 10, 2009, Ms. Zelasko searched LIONS again by Mr. Lazaridis' name, "ascertain[ed] the original search information and that no additional information . . . was available[,] retrieved the case file from the closed file room and provided EOUSA with a page count."  *Id.* ¶ 13.  Ms. Stearns states that "[a]fter completing the computer search . . . [Ms.] Zelasko . . . searched the Criminal Files Index and requested that all of the Criminal Assistant U.S. Attorneys . . . determine if they maintain any responsive files."  Second Stearns Decl. ¶ 17. But Ms. Zelasko makes no such statements in her declaration.  In addition, neither Ms. Stearns nor Ms. Zelasko has explained why the requester's name was the only search term utilized when Ms. Zelasko had identified a USAO criminal file number and, according to Ms. Stearns, information is retrievable from LIONS by name, file jacket number and district court case number.  *Id.*  Given this omission, the Court cannot find on the current record that EOUSA conducted a search reasonably calculated to locate all responsive records.  Therefore, summary judgment on the adequacy of EOUSA's search is denied.

---

[1]  Contrary to Mr. Lazaridis' argument based on his alleged custodial parent status, Pl.'s Opp'n at 6, DOJ was not required to search for third-party records pertaining to his daughter, V.L.  *See* Mem. Op. of May 26, 2010 [Dkt. # 38] at 5, n.3 (implicitly finding the unsettled issues surrounding V.L.'s custody beyond the scope of this FOIA action).  Elsewhere, Mr. Lazaridis claims that "there can be no expectation of privacy between him and V.L.," Response to Def. DOJ's Statement of Material Facts as to Which There is No Genuine Issue Submitted on Behalf of the FBI and Statement of Genuine Issues [Dkt. # 64] ¶ 4, but this statement ignores the reality that "a disclosure made to any FOIA requester is effectively a disclosure to the world at large." *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 836 (D.C. Cir. 2001).

*B. EOUSA's Claimed Exemptions*

1. Exemption 3

FOIA Exemption 3  covers records that are "specifically exempted from disclosure by statute . . .  provided that such statute either "(A) [requires withholding] in such a manner as to leave no discretion on the issue," or "(B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3); *see Senate of the Commonwealth of  Puerto Rico v. U. S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987).

EOUSA applied this exemption to 185 pages of grand jury testimony.  Second Stearns Decl. ¶ 22 & Summary of Withheld/Redacted Documents ("Revised *Vaughn* index") [Dkt. # 63-2] (Doc. Nos. 33-35).  The Federal Rules of Criminal Procedure prohibit disclosure of "matters occurring before [a] grand jury."  Fed. R. Crim. P. 6(e)(2); *see In re: Motions of Dow Jones & Co., Inc.*, 142 F.3d  496, 498-501 (D.C. Cir. 1998).  Criminal Rule 6(e) qualifies as a statute under exemption 3, because it was affirmatively enacted by Congress.  *See Fund for Constitutional Government v. National Archives and Records Service*, 656 F.2d 856, 867-68 (D.C. Cir. 1981).  The Court of Appeals for the District of Columbia Circuit has limited the grand jury exception to material, which, if disclosed, would "tend to reveal some secret aspect of the grand jury's investigation, such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like."  *Senate of the Commonwealth of Puerto Rico*, 823 F.2d at 582 (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980)*(en banc)*).  EOUSA properly justified withholding grand jury testimony in its entirety because its release "would reveal the

scope of the grand jury and the direction of the investigation by providing the identities of the

targets . . . the source of the evidence, as well as the actual evidence produced before the grand

jury." Second Stearns Decl. ¶ 24.

2. Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a]

or letters which would not be available by law to a party other than an agency in litigation with

the agency." 5 U.S.C. § 552(b)(5). "[T]he parameters of Exemption 5 are determined by

reference to the protections available to litigants in civil discovery; if material is not 'available'

in discovery, it may be withheld from FOIA requesters." *Burka v. U.S. Dep't of Health and*

*Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996); accord *Sussman v. U.S. Marshals Service*, 494

F.3d 1106, 1112 (D.C. Cir. 2007) (citing cases).

EOUSA applied this exemption to 24 whole pages and one redacted page of

information. Second Stearns Decl. ¶ 28 & Revised *Vaughn* index (Docs. 1, 7, 31, 32); Stearns

Supp. Decl., Ex. CC [Dkt. # 63-2] (Supp. *Vaughn* index). The withheld records are described as

containing attorney work product and deliberative process material with regard to "Lazaridis'

pending kidnapping case," Second Stearns Decl. ¶ 27, including "information reflecting the

deliberative process of the USAO-WDMI and other federal and state agencies in their

consideration of possible criminal actions against the [sic] Lazaridis." *Id*. ¶ 28. Nineteen pages

are described as an "attorney's summary of litigation," one document is a two-page letter from an

AUSA to the FBI "prepared in contemplation of litigation," and one page is described as an

"attorney's draft" of an "[u]ndated one-page chronology of a case." Revised *Vaughn* index

(Docs. 1, 31, 32). The remaining document, a one-page letter to an AUSA from an attorney, was

released with the attorney's handwritten notes redacted. *Id.* (Doc. 7). Similarly, EOUSA withheld from the supplemental release of records referred from the FBI, a two-page letter to an FBI agent from an AUSA "prepared in contemplation of litigation." Supp. *Vaughn* index (Doc. 1). According to Ms. Stearns, "[t]he attorney work product and deliberative process are so interwoven as to make it all, in essence, attorney work product." Second Stearns Decl. ¶ 28.

EOUSA properly applied exemption 5 to the withheld material predominantly as attorney work product but also as deliberative process material. *See Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 616 (D.C. Cir. 1997) (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)) (The deliberative process privilege "shields only government 'materials which are both predecisional and deliberative.' "); *Heggestad v. United States Dep't of Justice*, 182 F. Supp.2d 1, 7 (D.D.C. 2000) ("The primary purpose of [the attorney work product privilege] is to protect against disclosure the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation.") (citing Fed. R. Civ. P. 26(b)(3)). Furthermore, the Court finds that EOUSA properly withheld 24 pages containing such material in their entirety. *See Martin v. Office of Special Counsel, Merit Systems Protection Board*, 819 F.2d 1181, 1187 (D.C. Cir. 1987) ("The work-product privilege simply does not distinguish between factual and deliberative material [for segregability consideration] . . . . [I]f the work-product privilege protects the documents at issue here, Exemption (b)(5) protects them as well, regardless of their status as "factual" or "deliberative.").

3. Exemptions 6 and 7(C)

Recognized as the personal privacy exemptions, FOIA exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute

a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6); exemption 7 protects

from disclosure "records or information compiled for law enforcement purposes, but only to the

extent that the production of such law enforcement records or information . . ." would cause

certain enumerated harms, § 552(b)(7).  EOUSA invoked exemptions 6 and 7(C) jointly to

withhold third-party information.  *See* Revised *Vaughn* index (Docs. 1, 5-6, 8-31, 33-35); Supp.

Vaughn index (Docs. 1-5).[2]

      Ms. Stearns states that the "USAO-WDMI compiled all of the information

contained in the responsive criminal file and the Victim/Witness file for the law enforcement

purpose of prosecuting Lazaridis for alleged parental kidnapping/interference with parental rights

offense."  Second Stearns Decl. ¶ 34.  The fact that the office "declined prosecution," *id*. ¶ 33,

does not change the law enforcement purpose for which the records were compiled.  Thus, the

Court will address only EOUSA's application of exemption 7(C) to the withheld material.[3]

Exemption 7(C) protects the identities of suspects, witnesses and other persons of investigatory

interest who are identified in agency records in connection with alleged criminal activity.

*Computer Professionals for Soc. Responsibility v. U.S. Secret Service*, 72 F. 3d 897, 904 (D.C.

Cir. 1996) (noting "strong interest of individuals, whether they be suspects, witnesses, or

investigators, in not being associated unwarrantedly with alleged criminal activity" (quoting

*Dunkelberger v. DOJ*, 906 F.2d 779, 781 (D.C. Cir. 1990)).  For the same kinds of protective

---

[2] Given the Court's finding that EOUSA properly withheld Documents 1, 31, 32 and Supp. Document 1 in their entirety under exemption 5, the application of exemptions 6 and 7(C) to portions of those same documents will not be addressed.

[3] *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 758 (1989) (finding "Exemption 7(C)'s privacy language broader than the comparable language in Exemption 6").

reasons, the names of law enforcement officers who work on criminal investigations have usually been protected against release by exemption 7(C). *Lesar v. DOJ*, 636 F.2d 472, 487 (D.C. Cir. 1980).

Because third-party identifying information is "categorically exempt" from disclosure under exemption 7(C), *Nation Magazine, Washington Bureau v. U.S. Customs Service*, 71 F.3d 885, 896 (D.C. Cir. 1995), EOUSA, having no third-party waivers or proofs of death, properly redacted such information from released documents 5, 8, 9, 10, and 25. *See* Revised *Vaughn* index. EOUSA's withholding of portions of a ten-page court judgment (Doc. 6), however, is inconsistent with what is either the same document as, or one similar to, Doc. 4, which was released completely. *See id.* Furthermore, the description and justification sections pertaining to Doc. 6 appear to refer to different documents insofar as the document is described as a "[t]en-page judgment" whereas the justification section refers to "the letter." Given this confusion, the Court will deny summary judgment to EOUSA on its partial withholding of Doc. 6.

The protective scope of exemption 7(C) "ordinarily" is limited to "the specific information to which it applies [*i.e.*, names, addresses and other identifying information], [but] not the entire page or document in which the information appears[.]" *Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2000). Thus, when, as here, entire documents are withheld under exemption 7(C), the agency must show that the " 'exempt and nonexempt information are 'inextricably intertwined,' such that the excision of exempt information would . . . produce an edited document with little informational value.' " *Mays*, 234 F.3d at 1327 (quoting *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981)). Ms. Stearns states that "the material withheld in its entirety contained no meaningful portions that could be released without destroying the integrity

of the document . . . ." Second Stearns Decl. ¶ 41.  In addition, it is noted in the Revised *Vaughn*

index with regard to the documents withheld in their entirety under exemptions 6 and 7(C) that

the "[e]xempt information is so inextricably intertwined with any nonexempt information that it

cannot be meaningfully segregated for release."  *See* Docs. 12-17, 20-24, 26-30 and Supp.

*Vaughn* index, Docs. 2-4.

Disclosure of the otherwise protected information may be compelled upon a

showing that the public interest – *i.e.*, that the withheld information is necessary to confirm or

refute "compelling evidence that the agency denying the FOIA request is engaged in illegal

activity," *Quinon v. FBI*, 86 F.3d  1222, 1231 (D.C. Cir. 1996) --  outweighs the privacy interests

at stake.  The public interest "sought to be advanced [must be] a significant one more specific

than having the information for [one's] own sake," however.  *National Archives and Records*

*Administration v. Favish*, 541 U.S. 157, 172 (2004).  In making such a showing, a plaintiff must

assert "more than a bare suspicion" of official misconduct. *Id*. at 174.  He "must produce

evidence that would warrant a belief by a reasonable person that the alleged Government

impropriety might have occurred."  *Id*.  Otherwise, the balancing requirement does not come into

play.  *See id*. at 175.

Mr. Lazaridis seems to claim that disclosure is warranted because the requested

documents will assist him in proving violations under *Brady v. Maryland*, 373 U.S. 83 (1963),

and future claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403

U.S. 388 (1971).  *See* Pl.'s Opp'n Mem at 14; Res. in Opp'n to Def. United States Dep't of

Justice's Mot. for Partial Summ. J. as to the EOUSA [Dkt. # 55] at 1.  As a general rule

applicable here, however, the identity of the requester and purpose of the request are immaterial

to the resolution of a FOIA claim.  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the*

*Press*, 489 U.S. 749, 770-71 (1989); *Loving v. Dep't of Defense,* 550 F.3d 32, 39 (D.C. Cir. 2008). Furthermore, the public interest in disclosure "does not include helping an individual obtain information for his personal use." *Oguaju v. U.S.*, 288 F.3d 448, 450 (D.C. Cir. 2002), *vacated and remanded on other grounds*, 124 S.Ct. 1903 (2004), *reinstated*, 378 F.3d 1115 (D.C. Cir. 2004) (citation omitted). Mr. Lazaridis' speculative and conclusory claims of employee misconduct provide no counterweight to the strong third-party privacy interests shielded by exemption 7(C).

For the foregoing reasons, the Court finds that DOJ is entitled to summary judgment on EOUSA's application of exemptions 3, 5 and 7(C) to the withheld information, except its application of exemption 7(C) to Document 6, which remains questionable. In addition, the Court finds that DOJ is not entitled to summary judgment on the adequacy of EOUSA's search for responsive records. Hence, the motion as to EOUSA will be granted in part and denied in part without prejudice to reconsideration after supplementation of the record.

FBI's Response

Mr. Lazaridis challenges the FBI's withholding of responsive material under FOIA exemptions 3, 6, 7(C) and 7(D) and questions the adequacy of its search. Pl.'s Mem. of Law in Opp'n to Def. United States Dep't of Justice's Mot. for Partial Summ. J. as to the FBI ("Pl.'s Opp'n Mem.") [Dkt. 64] at 1; *id*. at 13 ("The FBI's Application of FOIA Exemption 2 Is Not Contested").

A. FBI's Search for Records

Following the Court's initial ruling, the FBI searched its Central Records System ("CRS") "utilizing a six-way phonetic breakdown of Lazaridis' name . . . ." Second Hardy Decl. ¶ 32. In addition to the name, the FBI searched by Mr. Lazaridis' birth date, birthplace, social

security number and prior addresses. *Id.* It located two main files in the Detroit Field Office

containing 1,243 pages of responsive records. The search identified no cross-reference files. *Id.*

Mr. Hardy has provided a detailed description of the CRS and retrieval methods, *see id* at ¶¶ 26-

31, and has explained why the General Indices to the CRS files are the means by which the FBI

can determine what retrievable information, if any, it may have in its CRS files on a particular

individual. *Id.* ¶ 31; Reply Mem. in Supp. of United States DOJ's Mot. for Partial Summ. J. as

to the FBI [Dkt. # 67], Third Decl. of David M. Hardy ("Third Hardy Decl.") [Dkt. # 67-1] ¶¶

16-20.

Contrary to Mr. Lazaridis' argument that the search did not include "relevant"

field offices, Pl.'s Opp'n Mem. at 8, Mr. Hardy states that "[a]ccess to the CRS files in FBI field

offices is also obtained through the General Indices . . . ." Second Hardy Decl. ¶ 28. "The

entries in the General Indices fall into two categories: [] A 'main' entry, or 'main' file . . . [and]

A 'reference' entry . . . sometimes called a 'cross-reference' . . . ." *Id.* ¶ 27. In addition, Mr.

Hardy states that "the FBI went above and beyond its normal search procedures . . . and contacted

Special Agent[s] . . . Roberta Gilligan and . . . Scott Duffey in response to plaintiff's allegations

that they still had [responsive] documents . . . that had not been filed in the CRS." Third Hardy

Decl. ¶ 20. According to Mr. Hardy, both agents "stated all the information they had

accumulated regarding the plaintiff had been [] filed and indexed to ACS [Automated Case

Support], and is no longer in their possession."[4] *Id.* The Court is satisfied from Mr. Hardy's

declarations that the FBI conducted a reasonably adequate search for records, which in fact

located a main file on Mr. Lazaridis.

_____

[4] "Because the CRS cannot electronically query the case files for data, such as an
individual's name or social security number, the required information is duplicated and moved to
the ACS so that it can be searched." Second Hardy Decl. ¶ 29.

### B.  FBI's Claimed Exemptions

#### 1.  Exemption 3

The FBI withheld under this exemption federal grand jury subpoenas, the names and identifying information of individuals subpoenaed to testify before the grand jury, "information that identifies specific records subpoenaed by the Federal Grand Jury, and Federal Grand Jury meetings."  Second Hardy Decl. ¶ 44.  The information was withheld because "[a]ny such disclosure would clearly violate the secrecy of the grand jury proceedings and could reveal the inner workings of the federal grand jury that considered the case."  *Id*.

For the reasons previously stated in approving EOUSA's withholding of grand jury testimony, the Court finds that the FBI properly withheld all of the foregoing information, except what the Court assumes are dates of "Federal Grand Jury meetings."  *See Lopez v. Dep't of Justice*, 393 F.3d 1345, 1347 (D.C. Cir. 2005) (confirming that "dates on which grand jury subpoenas and requests for production, writs of testificandum and witness debriefings are all items that inherently reveal secret matters occurring before the grand jury . . . .").  Mr. Hardy has not stated how disclosure of the grand jury's meeting dates would reveal its inner working.  *See Peay v. Dep't of Justice*, 2007 WL 788871 at *3 (D.D.C., Mar. 14, 2007) (denying summary judgment where DOJ failed to "explain[] how the disclosure of the dates the grand jury convened would tend to reveal a "secret aspect" of the grand jury investigation . . . .").  Absent clarification of what, if not dates, is the information pertaining to "Federal Grand Jury meetings," DOJ will be required to release that information.  *See id*. at *4 (directing the release of "the dates on which the grand jury convened").

2. Exemptions 6 and 7(C)

The FBI withheld information under exemption 6 in conjunction with exemption 7(C). Second Hardy Decl. ¶¶ 47-48. "[T]he FBI located responsive records [that] were compiled . . . as a result of a criminal investigation into an alleged illegal relocation of Lazaridis' minor child outside the United States, based on authority provided in the International Parental Kidnapping Crime Act of 1993, 18 U.S.C. § 1204." Second Hardy Decl. ¶ 35. Because the records were compiled for law enforcement purposes, the Court will address only the FBI's application of exemption 7(C). As previously determined with regard to EOUSA, the Court finds that the FBI properly invoked exemption 7(C) to redact the names and identifying information of FBI Special Agents and support personnel, Second Hardy Decl. ¶¶ 49-50, and that of other third-party individuals of various categories. *Id.* ¶¶ 52-60.

The Court also finds that Mr. Lazaridis has provided no evidence of an overriding public interest requiring disclosure of the otherwise protected information. In addition to seeking the information for his personal use, which the Court previously determined is not a valid public interest, Mr. Lazaridis suggests that some information has been publically revealed. *See* Pl.'s Opp'n Mem. at 16. Under the public domain theory, FOIA-exempt information loses its protection if it was previously "disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 553-54 (D.C. Cir. 1999) (citations omitted). However, Mr. Lazaridis has " 'the initial burden of pointing to specific information in the public domain [by official disclosure] that appears to duplicate that being withheld.' " *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)). Mr. Lazaridis cites a defamation case he filed in the Western District of Michigan, Pl.'s Opp'n Mem.

at 16, which was dismissed under the fugitive disentitlement doctrine. *See Lazaridis v. Herald Co., Inc.*, 2006 WL 222839 (W.D. Mich., Jan. 26, 2006). He has not shown what, if any, of the protected information is in the public domain. The Court therefore finds that DOJ is entitled to summary judgment on the FBI's application of exemption 7(C) to the withheld material.

### 3. Exemption 7(D)

FOIA Exemption 7(D) allows the withholding of records if their disclosure "could reasonably be expected to disclose the identity of a confidential source. . . ." 5 U.S.C. § 552(b)(7)(D). "[I]n the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation," the agency may also withhold "information furnished by a confidential source." *Id.* A confidential source includes "a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis." *Id.* The "paramount objective" of this exemption "is to keep open the Government's channels of confidential information." *Birch v. U.S. Postal Serv.*, 803 F.2d 1206, 1212 (D.C. Cir. 1986).

When invoking Exemption 7(D), an agency must demonstrate, through the use of reasonably detailed affidavits, that the information was compiled for a law enforcement purpose, that an informant provided the information under either an express or implied promise of confidentiality and that disclosure could reasonably be expected to disclose the source's identity. *Landano*, 508 U.S. at 171-72. An express assurance of confidentiality is shown by an agency's proffer of "probative evidence that the source did in fact receive an express grant of confidentiality." *Campbell*, 164 F.3d at 34 (quoting *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1061 (3d Cir. 1995)). Such evidence may take many forms, such as notations on the face of the withheld document, an official's personal knowledge about the source, a statement from

the source, or documents discussing practices or policies for dealing with the source at issue or similarly situated sources. *Id.* When the agency claims an implied assurance of confidentiality, the proper inquiry is "whether the particular source spoke with an understanding that the communication would remain confidential." *Landano,* 508 U.S. at 172. An implied assurance of confidentiality may be inferred from evidence showing the circumstances surrounding the imparting of the information, including the nature of the criminal investigation and the informant's relationship to the target. *Id; Computer Professionals for Social Responsibility*, 72 F.3d at 905-06.

Under Exemption 7(D), the FBI withheld the identity of and information supplied by a foreign government agency under an express grant of confidentiality, Second Hardy Decl. ¶¶ 64-65, but Mr. Hardy does not claim to have any personal knowledge of the agreement and he has presented no probative evidence of such an agreement. Therefore, DOJ is not entitled to summary judgment on this claim of an express grant of confidentiality.

The FBI withheld under an implied grant of confidentiality the identity of and information supplied by an individual "during the course of the investigation," *id.* ¶ 63, and information supplied by the Ottawa County, Michigan, Sheriff's Department. *Id.* ¶ 66. Mr. Hardy states only that the "individual . . . provid[ed] sensitive and secretive information involving Lazaridis which would reasonably raise fear of retaliation if his/her identity were revealed." *Id.* This generalized statement could apply to any law enforcement investigation. It is unknown what relationship the source had to Mr. Lazaridis and his or her knowledge of any alleged activity from which a reasonable fear of retaliation may be found. An investigation of parental kidnapping without more does not seem to fit within the narrow category of cases where

confidentiality is presumed.  *See Landano*, 508 U.S. at 179-80 (discussing "generic circumstances" in which an applied assurance of confidentiality fairly can be reasonably inferred); *Mays*, 234 F.3d at 1330-31 (concluding that "we have no doubt that a source of information about a conspiracy to distribute cocaine typically faces a sufficient threat of retaliation that the information he provides should be treated as implicitly confidential").  Mr. Hardy's bare assertion fails to provide a factual basis for finding that the individual spoke on condition of an implied grant of confidentiality.

Mr. Hardy also states that the Sheriff's Department provided to the FBI reports and information obtained during its "investigation of a complaint filed with regard to [Mr. Lazaridis'] alleged removal of his daughter out of the United States, including an incident report," and that "a local sheriff contacted an FBI SA to provide information concerning the investigation[,] [which] was gathered by conducting interviews of third parties."  *Id*.  Exemption 7(D) seems inapplicable to this information because the FBI's source – the Ottawa County Sheriff's Department – is identified and, thus, not confidential.[5]  But even if the exemption applies, Mr. Hardy has not stated any facts from which the Court can find that "the particular source [Sheriff's Department] spoke [or conveyed information] with an understanding that the communication would remain confidential."  *Landano*, 508 U.S. at 172.  Mr. Hardy's rationale that "disclosure would result in harm to the FBI's [] law enforcement endeavors" with, *inter alia*, local law enforcement agencies, Second Hardy Decl. ¶ 66, suggests the type of "sweeping presumption" of confidentiality that the Supreme Court rejected in favor of a "more particularized approach."  *Landano*, 508 U.S. at 175, 180.

---

[5]  This finding does not preclude the FBI from invoking other exemptions to protect information obtained from the Sheriff's Department.

Because the FBI has not shown that confidential sources provided information under either an express or an implied grant of confidentiality, the Court will deny summary judgment on the FBI's invocation of exemption 7(D).

## C. Segregability of FBI Records

The Court of Appeals for the District of Columbia Circuit has held that a District Court in a FOIA case has "an affirmative duty to consider the segregability issue *sua sponte*." *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). This directive stems from the requirement under 5 U.S.C. § 552(b) that any "reasonably segregable" information must be disclosed – that is, information that can be separated from the rest of a document – even if the document is otherwise exempt from disclosure, unless the exempt and non-exempt portions are "inextricably intertwined with exempt portions." *Id.*; *Mead Data Ctr., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). An agency must provide a "detailed justification" and not just "conclusory statements" to prove that it has released all reasonably segregable information. *Mead Data Center, Inc.*, 566 F.2d at 261.

Mr. Hardy concludes that "the FBI has processed and released all reasonably segregable information  . . . ," Hardy Decl. ¶ 69, but he has not separately described the 391 pages that were withheld in their entirety and discussed the applicable exemptions.[6]  It is not the Court's job to cull the voluminous record and to piece together such information.[7]  The Court is

---

[6]  Mr. Hardy has described 449 of the 840 pages withheld completely as "duplicates of other released pages."  Second Hardy Decl. ¶ 33.

[7]  The initial *Vaughn* index consisting of 1,353 pages is attached to Mr. Hardy's declaration as Exhibit S and appears on the electronic docket as 14 separate attachments.  Mr. Hardy states that "[t]he FBI has inserted 'deleted page sheets' as placeholders for the 840 pages withheld in full," Second Hardy Decl. ¶ 37, but he has not listed the page numbers of the deleted page sheets.  In supplementing the record, DOJ is advised to include the number of the attachment where the cited page appears.

without sufficient evidence to make a segregability finding with regard to the FBI records and, thus, will deny summary judgment on the FBI's withholding of documents in their entirety.

USNCB'S Response

Mr. Lazaridis challenges the adequacy of USNCB's search for responsive records and its withholding of information under FOIA exemptions 6, 7(A), 7(C) and 7(D).  Pl.'s Mem. of Law in Opp'n to Def. United States Dep't of Justice's Mot. for Partial Summ. J. as to INTERPOL-USNCB ("Pl.'s Opp'n Mem.") [Dkt. 56] at 1, 7-11; *see id*. at 7 ("USNCB's Application of FOIA Exemption 2 Is Not Contested").  USNCB has withdrawn its exemption 7(A) claim.  Second Tanaka Decl. ¶ 3.  Thus, the contested issues are USNCB's search and its invocation of exemptions 6, 7(C) and 7(D) to the withheld information.

Ms. Tanaka has described USNCB's record systems and the retrieval methods that are generally employed upon the agency's receipt of a FOIA request.  *See id*. ¶¶ 2-5.  As to Mr. Lazaridis' request, Ms. Tanaka concludes that "[a] search of the USNCB's system of records and administrative files was conducted using the methods indicated in #3 and #4."  *Id*. ¶ 10. Paragraphs 3 and 4 of Ms. Tanaka's declaration describe in general terms how the entity searches for records but they shed no light on the search for records responsive to Mr. Lazardis' request; particularly lacking is any evidence of the search terms utilized and the origin of the retrieved records.  Hence, the Court is without sufficient evidence to determine the adequacy of USNCB's search for records responsive to Mr. Lazaridis' request.  Furthermore, the Court cannot determine the propriety of USNCB's withholding of information under exemption 7 because it has no factual basis to find that the retrieved documents were compiled for law enforcement purposes. *See* Second Tanaka Decl. ¶¶ 2-3 (surmising that the "two sources of information searched for information that could be responsive to [Mr. Lazaridis'] request" were USNCB's system of

records containing law enforcement and humanitarian material and its administrative files containing "non-investigative topical files . . . "). Therefore, the Court will deny DOJ's motion for summary judgment as to the USNCB without prejudice to reconsideration after supplementation of the record.

## IV.  CONCLUSION

For the foregoing reasons, the Court rules as follows:  (1) DOJ's motion for partial summary judgment on EOUSA's invocation of FOIA exemptions 3, 5 and 7(C), except as to Document 6, is granted; as to EOUSA's search and the withholding of Document 6, the motion is denied without prejudice.  (2) DOJ's motion for partial summary judgment on the FBI's search for responsive records and its invocation of exemptions 7(C) and 3, except as to information pertaining to "Federal Grand Jury meetings," is granted; in all other respects, the motion is denied without prejudice.  (3) DOJ's motion for partial summary judgment as to INTERPOL-USNCB is denied without prejudice.  A memorializing order accompanies this Memorandum Opinion.

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

Date: February 24, 2011